STATE of Iowa, Appellee,

v.

Dean E. SCHMITT, Appellant.

No. 63221.

Supreme Court of Iowa.

March 19, 1980.

Timothy J. Gallagher of Cody, Roth & Gallagher, P. C., Dubuque, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., Robert Curnan, Dubuque County Atty., James G. Schilling and Arthur F. Gilloon, Asst. Dubuque County Attys., for appellee.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, ALLBEE and LARSON, JJ.

ALLBEE, Justice.

Defendant Dean E. Schmitt appeals from his conviction of the crime of escape from custody, a violation of section 719.4(1), Supplement to the Code 1977. The sole error assigned by defendant is trial court's denial of his motion to dismiss for the State's failure to file a speedy information. As

cross-appellant, the State seeks discretionary review of the sentencing order, which imposed a concurrent rather than consecutive sentence. We reverse defendant's conviction and decline review of the sentencing order because the State's issue is rendered moot by our resolution of defendant's appeal.

Defendant's motion was principally based upon Iowa R.Crim.P. 27(2)(a), which provides:

When a person is arrested for the commission of a public offense and an indictment is not found against him within forty-five days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives his right thereto.

Defendant was charged by a trial information,[1] which was filed by the Assistant Dubuque County Attorney in the district court on January 30, 1979. Defendant claims he was "arrested," within the meaning of rule 27(2)(a), on October 18, 1978, thus more than forty-five days before he was formally charged. The State, on the other hand, argues that defendant was merely recaptured into custody on October 18, 1978. Accordingly, in its view, no event occurred from which the statutory forty-five day period could begin to run, and the State was free to file its information any time within the statute of limitations for the crime.[2]

The facts concerning the events of October 18 are not controverted. On that date defendant was in the custody of the Dubuque County Sheriff at the Dubuque Law Enforcement Center awaiting trial on charges of burglary and possession of burglar's tools. Early that afternoon he escaped and fled on foot. John C. Galle, a police officer for the city of Dubuque, testified at the pretrial hearing on defendant's motion to dismiss that while engaged in his routine duties that afternoon he received a

1. We have interpreted the speedy indictment requirement to apply to cases prosecuted on county attorney's information as well. *See, e. g., State v. Davis*, 259 N.W.2d 843, 845 (Iowa 1977); *State v. Boyd*, 224 N.W.2d 609, 611 (Iowa 1974).

2. § 802.3, Supplement to the Code 1977 (within three years after commission).

radio dispatch that a search was under way for Dean Schmitt. Officer Galle joined the search and soon learned from another officer that Schmitt had escaped from jail. Later that afternoon, Officer Galle found defendant sitting under a group of trees next to a flood wall beside the Mississippi River in Dubuque. As the first searcher to come upon him, Officer Galle drew his service revolver, ordered defendant not to move and called for the assistance of a nearby deputy sheriff. Within a minute, the deputy arrived and drew his revolver. Officer Galle then told defendant to roll over and "stay put" while he handcuffed defendant. The two officers then escorted defendant to a police patrol car, which carried defendant back to the Law Enforcement Center.

 To learn the meaning of "arrest" as used in Iowa R.Crim.P. 27(2)(a), we first look to the definition of arrest provided in section 804.5, Supplement to the Code 1977: "Arrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or his or her submission to custody." The manner of making an arrest is prescribed in section 804.14, Supplement to the Code 1977.

The person making the arrest must inform the person to be arrested of the intention to arrest him or her, the reason for arrest, and that he or she is a peace officer, if such be the case, and require him or her to submit to the person's custody, except when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so; . . . .

These provisions, the rule and the two statutory sections, were enacted together, *see* 1976 Session, 66th G.A., ch. 1245(2), §§ 405, 1301, as part of the Iowa Criminal Code which became effective January 1, 1978. It is a well-settled rule of statutory construction that statutes relating to the same subject matter shall be construed together,

particularly if the statutes were passed in the same legislative session. *Manilla Community School District v. Halverson*, 251 Iowa 496, 503, 101 N.W.2d 705, 709 (1960). Therefore, we define "arrest" in rule 27(2)(a) to be the same as the definition provided in section 804.5, as explained in section 804.14. *See State v. Thomas*, 275 N.W.2d 422, 423 (Iowa 1979) (the legislature is its own lexicographer).

 Applying that definition to the facts here, we conclude that defendant is correct in asserting that the events precipitated by Officer Galle's discovery and apprehension of him on October 18 constituted an arrest. Defendant submitted to custody at gunpoint and was restrained by handcuffs. *See* § 804.5. Officer Galle had been previously informed that defendant had escaped from jail; thus Galle acted in the belief that he was arresting a person actually engaged in the commission of a criminal offense: escape from custody. Under this exigency, he was not obliged to inform defendant of an intention to arrest him, the reason for the arrest and that he (Galle) was a peace officer. *See* § 804.14. The actions taken and result achieved fulfill the statutory criteria of an arrest. The lack of follow-up of booking or charges does not eradicate the event or nullify it as an arrest.

In its argument, the State largely relies upon two cases. The first case discussed in the State's brief is *State v. Mason*, 203 N.W.2d 292, 294 (Iowa 1972). In *Mason*, the defendant, while incarcerated on one charge, was informed against by the county attorney for another offense, unrelated to the one for which he was in jail. More than thirty days had elapsed between the commission of the later charged offense and the filing of the information. This court held that a dismissal was "not mandated where the public offense for which a defendant is *held to answer* is unrelated to the one on which the allegedly late indictment or information is subsequently filed." *Id.* (Emphasis added.) [3]

---

**3.** Being "held to answer," pursuant to former § 795.1, then applicable, set forth and discussed *infra* at 27, was the event from which commenced the running of the time (thirty days) within which an indictment was to be returned.

*Mason* is of no aid to the State because it is factually distinguishable. In *Mason* there was no specific date when it could be said he was arrested for the offense later charged, as there was in this case.

The other case relied upon by the State in support of its position is *State v. Satterfield*, 257 Iowa 1193, 136 N.W.2d 257 (1965). Satterfield had been sentenced to imprisonment upon a forgery conviction. After serving some time he was paroled, but under the terms of that parole he was restricted to Polk County. He subsequently was found in Missouri in violation of his parole, taken into custody and thereafter returned to the Iowa penitentiary. Approximately five months later he was charged with escape in violation of sections 745.1 and 745.3 of the Code of 1962. Section 745.3 provided that a paroled person who left the territory within which he was restricted to stay by the terms of his parole would be deemed to have escaped from custody within the meaning of section 745.1, which proscribed escape and prescribed its punishment. And, in addition, when finding that Satterfield was guilty of escape from custody, the *Satterfield* court took into consideration section 247.9 of the Code of 1962,[4] which provided that a parolee's "technical" custody remained with the warden of the penitentiary.

Satterfield argued that the prosecution should have been dismissed under the predecessor to rule 27(2)(a). That provision, § 795.1, The Code 1962 (as amended by 60th G.A., ch. 332, § 1), stated, in part:

> When a person is *held to answer* for a public offense, if an indictment be not found against him at the next regular term of the court at which he is held to answer or within thirty days, whichever first occurs, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown. [Emphasis added.]

However, as Satterfield had never been "held to answer," section 795.1 was held to have no application to his situation. *Id.* at 1195–96, 136 N.W.2d at 258–59.

*Satterfield* is not dispositive of this case. A comparison of the statutory provision requiring speedy indictments applicable there and rule 27(2)(a), applicable here, shows a significant difference. Then, the event which triggered the running of time within which an indictment must be returned was being "held to answer." Now, it is being "arrested."

The terms are not synonymous. As previously stated, "arrested" means being physically taken into custody in the manner authorized by law. Formerly, physical restraint was irrelevant to a determination of whether the defendant had been "held to answer." *Bergman v. Nelson*, 241 N.W.2d 14, 16 (Iowa 1976) ("Whether an accused is detained or admitted to bail is relevant on the issue of good cause for delay but does not affect the initial applicability of § 795.1."). Rather, the term was narrowly defined to mean being held to answer by a preliminary examination or waiver of same, *State v. Montgomery*, 232 N.W.2d 525, 526–27 (Iowa 1975), or being transferred by juvenile court order to district court, which was considered equivalent to a preliminary examination for purposes of section 795.1, *Bergman*, 241 N.W.2d at 16. *Cf. State v. Emery*, 230 N.W.2d 521, 523 (Iowa 1975) (defendant not "held to answer" when associate district court judge entered order of commitment and set date for preliminary examination, which was never held or waived, even though judge used wrong form, which falsely stated that defendant was held to answer).

 The State makes yet one more argument. This is that defendant could not have been "arrested," or taken into custody, as that term is statutorily defined, on October 18 because he had never left custody in

---

4. Section 247.9, The Code 1962, was repealed as part of the criminal code revision. 1976 Session, 66th G.A., ch. 1245(4), § 525. The corresponding section now applicable is § 906.-5, The Code 1979. *See* Table of Corresponding Sections of The Code 1977 to The Code 1979, The Code 1979, at 3608. Note, also, the Iowa Criminal Code now speaks of "arrest" of an alleged parole violator. § 908.1, The Code 1979.

the first place. He was, it is urged, in the "legal" custody of the sheriff even while physically absent from the Law Enforcement Center. Thus, the State theorizes that defendant was merely recaptured, not arrested.

We are not, however, persuaded by this argument. No definition of "legal" custody is offered by the State. The meaning of custody varies, we believe, depending upon the context in which it appears; it is an elastic term. In the context of the crime of escape, we have said that guilt may be premised upon a departure from either *actual* or *constructive* custody. *State v. Eads*, 234 N.W.2d 108, 111 (Iowa 1975). *Actual* custody refers to physical restraint, meaning detention, confinement or imprisonment; *constructive* custody refers to legal restraint, including work-release, probation or parole. "Legal" custody may thus connote constructive custody. *See Utley v. State*, 258 Ind. 443, 445–48, 281 N.E.2d 888, 890–91 (1972); *Eads*, 234 N.W.2d at 111. *See generally* 25 C.J.S. *Custody* 88–91 (1966). At no time relevant here was defendant in the sheriff's "legal" custody, in the sense of constructive custody.

Another meaning that may be ascribed to the term "legal" custody is the statutory authority given the sheriff for holding prisoners in custody. Section 356.2, The Code, provides that "[t]he sheriff shall have charge and custody of the prisoners in the jail or other prisons of his county, . . ." To say, however, that the sheriff's statutory custody continued even while defendant was physically absent from his place of confinement does not negate the fact that defendant had broken from actual custody. When Officer Galle took defendant back into this actual custody, the requirements of an "arrest" were satisfied. *See* § 804.5. To recapture defendant was to arrest him. The consequence of that arrest was to commence the statutory period within which he had to be informed against for the escape.

Defendant's motion to dismiss the prosecution of the escape charge should have been sustained because the trial information was filed more than forty-five days after his arrest. *See* Iowa R.Crim.P. 27(2)(a). In this connection, we note that the State neither has attempted to show good cause for the delay in the filing nor does it claim that defendant waived his right to speedy indictment. This case, accordingly, is reversed with instructions to dismiss the information.

REVERSED.