STATE of Iowa, Appellee,

v.

Charles E. MHOON, Jr., Appellant.

No. 65524.

Supreme Court of Iowa.

Sept. 23, 1981.

Richard Klausner of Kinnamon, Kinnamon & Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., and Lona Hansen, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK, and ALLBEE, JJ.

HARRIS, Justice.

Defendant was tried and convicted of possession of a controlled substance (cocaine) in violation of section 204.401(3), The Code 1979. Trial was to the court. Defendant assigns two errors. He believes there was insufficient evidence to support a finding that he knew of the presence and nature of the cocaine. He also argues he was denied a speedy trial. We affirm the trial court.

Defendant was serving time on an unrelated charge at the men's reformatory at Anamosa. Following a visit by his wife in the institution's visiting room, defendant entered what was described as the dressout area. In accordance with established procedures he disrobed in front of a correction officer.

The officer noticed a quick movement by defendant and then saw a pink balloon fall to the floor near defendant's heel. The officer picked up the balloon and saw it was filled with small paper packets. Another

officer was summoned and defendant was immediately placed in summary segregation.[1]

After interviewing defendant's wife, an officer opened the packets and found a white powder which a field test later showed to be cocaine. Officers then questioned defendant after reading him his *Miranda* warnings. Defendant denied any knowledge of the balloon and was returned to solitary confinement. Because of the punishment imposed at the disciplinary proceeding, defendant was confined ten days in solitary, lost 310 days honor time, and two days good time. He was not allowed shower or smoking privileges, was not allowed to leave his cell, was required to wear the clothes of a person in solitary confinement, and was not allowed to keep food or drink in his cell. The incident occurred February 8, 1980. Information was filed on this charge on April 4, 1980.

I. In *State v. Reeves*, 209 N.W.2d 18, 21 (Iowa 1973), we listed three things to be established in order to show unlawful possession of narcotics:

(a) that the accused exercised dominion and control (i. e., possession) over the contraband,

(b) that he had knowledge of its presence, and

(c) that the accused had knowledge that the material was a narcotic.

Defendant argues that there was no showing as to the second and, especially, the third of the three components.

In *Reeves*, 209 N.W.2d at 21–22, we went on to point out that the required knowledge could be shown by circumstantial evidence. The question here is whether the trial court, acting as finder of facts, could infer the required knowledge from the foregoing circumstances, especially from defendant's attempt to secrete the narcotic at the time in question.

Defendant argues there can be no such inference here because visitors are prohibited from passing any article, even an inno-

---

1. Summary segregation is not to be confused with a disciplinary proceeding. We are told   defendant was found guilty in such a proceeding three days later.

cent one, during a visit. 770 I.A.C. § 18.-2(1)(f). He argues that an inmate would have to conceal any article regardless of its character in order to bring it into the reformatory from the visiting room. Therefore, defendant reasons, concealment of an article provides no logical inference of guilty knowledge, particularly ·knowledge of an article's identity.

We believe the inference survives and remains sufficiently viable to support the trial court's finding. The administrative code otherwise allows for more innocuous and innocent items to be sent to inmates without difficulty. 770 I.A.C. § 18.4. The permissible means of transmitting lawful items were not used in this case. Defendant's attempt to conceal the item is some indication that it was contraband and known to the defendant. Contrary to defendant's contention we think it is a strong indication that the defendant knew what it was.

Under the standards for testing sufficiency of evidence of guilt explained in *State v. Robinson,* 288 N.W.2d 337, 339–41 (Iowa 1980), we reject the defendant's first assignment. The trial court could rationally infer from the evidence, including defendant's concealment of the balloon, that the defendant knew the balloon was there and contained a controlled substance.

■ II. As mentioned, the incident occurred, and defendant was placed in summary segregation, February 8, 1980. Information on this charge was not filed until April 4, 1980. According to Iowa R.Crim.P. 27(2)(a) the right to a speedy trial is violated unless (with exceptions not here involved) a person is charged within 45 days following arrest. Both our rule and *United States v. Marion,* 404 U.S. 307, 321, 92 S.Ct. 455, 464, 30 L.Ed.2d 468, 479 (1971), attach the right to a speedy trial at but not prior to arrest.

■ Defendant suggests under this assignment that the imposition of administrative segregation was tantamount to arrest

and triggered the 45 day period. Citing section 804.5, The Code, defendant says he was under "arrest" because he was in the "custody" of the director of adult corrections by virtue of being an inmate in the reformatory. Defendant seeks to support his analogy of administrative segregation to arrest by employing language from *State v. Schmitt,* 290 N.W.2d 24, 28 (Iowa 1980) ("custody . . . is an elastic term"). He lists privileges he believes he lost as a result of segregation. They include: (1) his job, (2) yard privileges, (3) smoking privileges, (4) shower privileges, (5) privileges concerning food, drink and clothing, and (6) liberty to leave his cell.

But we do not believe the analogy is sound. The United States Court of Appeals rejected a similar contention:

> Obviously, administrative segregation does not contain those incidents associated in *Marion* with arrest; that is, administrative segregation of a prisoner does not "disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy," etc. In addition, *Marion* speaks of the "actual restraints imposed by arrest *and* holding to answer a criminal charge" as engaging the protection of the speedy trial provision of the Sixth Amendment. *Id.* [404 U.S.] at 320, 92 S.Ct. at 463, 30 L.Ed.2d at 479. (Emphasis added.) Here the defendant was not "charged" with a crime and hence was not subject· to the "anxiety and concern accompanying public accusation" that *Marion* saw as a major reason for giving an accused a speedy trial. *Id.* at 320, 92 S.Ct. at 463, 30 L.Ed.2d at 478.

*United States v. Duke,* 527 F.2d 386, 389–90 (5th Cir. 1976) (footnotes omitted).

In interpreting our own rule, we do not believe the defendant's situation in summary segregation was the equivalent of arrest. It did not have those characteristics detailed in *Marion.* Defendant's situation in summary segregation was not sufficiently changed from his status as a general inmate to constitute "arrest." Hence it did not

trigger the speedy trial provisions of the rule.

AFFIRMED.