**STATE of Iowa, Appellee,**

v.

**Rayford Doyle GATHERCOLE,
Appellant.**

No. 94–1798.

Supreme Court of Iowa.

Sept. 18, 1996.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Ann E. Brenden, Assistant Attorney General, John P. Sarcone, County Attorney, and James Ward, Assistant County Attorney, for appellee.

LARSON, Justice.

This defendant, Rayford Gathercole, was convicted of first-degree robbery, Iowa Code §§ 711.1, 711.2 (1993), and possession of a firearm by a felon, Iowa Code § 724.26. We affirm.

## I. *The Facts.*

Gathercole was charged with a January 30, 1994 robbery of a Breadeaux pizza store in Des Moines. According to the evidence, an employee, Kathleen Boatwright, was working alone at approximately 10 p.m. when she received a telephone call placing a pizza order. The male caller appeared to be calling from a pay phone, judging by the traffic noise in the background. The information given by the caller later turned out to be fictitious.

Within twenty minutes of the call, Ms. Boatwright saw a white male, who she later identified as Gathercole, enter the store with a black male. Both men pulled ski masks over their faces after they entered. The man later identified as Gathercole pointed a silver-plated pistol at her, pushed her into a bathroom, and locked the door. Eventually, a deliveryman arrived. He released Ms. Boatwright from the restroom and called the police. Six hundred dollars was missing from the till.

The day after the robbery, police officers learned that at the time of the robbery an individual named Greg Sangster had observed a vehicle in the area occupied by a black male and a white male. Sangster worked at a used car lot nearby, and he became suspicious about the car and its occupants. He wrote down the license number, which he provided to the police. The car was owned by Gathercole's wife.

The officers obtained a search warrant for the defendant, the vehicle, and the defendant's residence. A search of the defendant's person revealed a loaded silver gun, which Ms. Boatwright identified as being similar to the one used in the robbery. A

search of the defendant's car revealed two gray ski masks and a five-dollar bill.

Ms. Boatwright, on seeing a photographic array, identified the defendant as the white male perpetrator. An officer interrogated the defendant, who admitted being in the area on the evening of the robbery but denied any involvement in it. A warrant for Gathercole's arrest was issued on February 7, 1994, but it could not be served on him at that time because he had left the state. He was arrested in Des Moines on February 23, after he was returned from Utah, and the county attorney's information was filed on April 5, 1994.

## II.  *The Issues.*

Gathercole contends that (1) he was not indicted within forty-five days of his arrest as required by Iowa Rule of Criminal Procedure 27(2)(a), (2) the arrest warrant was issued without probable cause, and (3) the jurors were improperly permitted to listen to Gathercole's tape-recorded interview.

■ A.  *The timely indictment issue.* Gathercole was arrested as a fugitive in Utah on February 11, 1994, when a Utah trooper checked his license plate and learned of the outstanding Iowa arrest warrant. The Utah officer, apparently proceeding under a section of Utah's uniform extradition act equivalent to Iowa Code section 820.14, took Gathercole before a Utah judge to be advised of the charges against him and of his rights concerning extradition procedures.

On February 14, Gathercole waived extradition. Utah authorities so notified Iowa and requested that Gathercole be picked up within ten days. Transcor America, Inc., a private corporation, retrieved him in Utah on February 17, 1994, and delivered him to Des Moines authorities on February 22. The arrest warrant was served in Des Moines the following day.

Gathercole moved to dismiss the case on the ground that the county attorney's information, filed on April 5, 1994, was not filed within forty-five days of his arrest. In resolving this issue, the critical question is when was Gathercole "arrested" for purposes of Iowa Rule of Criminal Procedure 27(2)(a). This rule provides:

> When an adult is arrested for the commission of a public offense, . . . and an indictment is not found against him within forty-five days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives his right thereto.

The State argues that Gathercole was arrested on February 23, when the arrest warrant was served on his return from Utah. The county attorney's information filed on April 5, 1994, was therefore within the forty-five-day limit of rule 27(2)(a). Gathercole contends, on the other hand, that the information was beyond forty-five days of his arrest because, he claims, the arrest occurred on February 17, when Transcor took possession of him.

The specific source of Transcor's authority to transport Gathercole to Iowa is not in the record, although this stipulation appears in the transcript of the hearing on Gathercole's motion to dismiss:

> MR. THOMAS [defense counsel]: I just wanted to make sure that the State was stipulating to the fact that this corporation that picked up Mr. Gathercole was an agent for either the Des Moines Police Department or the Polk County Sheriff's Office in picking Mr. Gathercole up.
>
> MR. WARD [prosecuting attorney]: I'd stipulate that they were hired by the State to pick up the defendant.
>
> MR. THOMAS: And that the pick up was made on February 17, 1994?
>
> MR. WARD: Yes.

A transporting agent, such as Transcor, is an integral part of any extradition proceeding. Under 18 U.S.C. § 3182, which implements the constitutional provisions for extradition and sets the parameters of state extradition procedures, an asylum state shall deliver the fugitive to the "agent of [the demanding state] when he shall appear."

The Uniform Criminal Extradition Act, found in Iowa Code chapter 820, provides in part:

> [T]he governor [of the demanding state] shall issue a warrant . . . to some agent,

commanding the agent to receive the person so charged if delivered to the agent and *convey the person to the proper officer of this county in this state in which the offense was committed.*

Iowa Code § 820.22 (emphasis added).

An interstate extradition *compact,* which has been adopted by Iowa in addition to our uniform act, provides the following with respect to such an agent:

The local prosecuting authority of the demanding state shall cause a warrant to be issued to an agent, commanding the agent to receive the fugitive when delivered to the agent *and convey the fugitive to the proper officer of the local jurisdiction in the demanding state.*

Iowa Code § 818.9 (emphasis added).

■ Despite Gathercole's contention that he was "arrested" by Transcor on February 17 when it took possession of him, neither 18 U.S.C. § 3182 nor the Iowa extradition statutes suggest that an agent has the power to make an arrest. In fact,

[t]he agent, as such, has nothing to do with securing the requisition from the governor of the demanding state, nothing to do with having it honored by the governor of the asylum state, *and no duty to arrest and secure the fugitive.* His duty is to conduct or transport the fugitive to the demanding state after the executive authority of the asylum state has delivered such fugitive to him. . . .

35 C.J.S. *Extradition* § 20, at 446 (1960) (emphasis added) (citations omitted).

In addition, it is stated that

[t]he obligation of the extradition agent is limited to transporting the accused to the demanding state after his surrender by the authorities of the asylum state; the officer has no right to gather an armed force and rearrest a fugitive by violence, although he may use all precaution to prevent his escape and may follow in hot pursuit to recapture.

31A Am.Jur.2d *Extradition* § 147, at 856 (1989).

The wording of Iowa Code sections 818.9 and 820.22 (quoted above), as well as Utah's

identical uniform-act provision, Utah Code § 77–30–22 (1953), makes it clear that an agent is not given any powers of arrest.

We define an "arrest" in speedy-trial cases by our general law of arrest under Iowa Code chapter 804 because rule of criminal procedure 27(2) and Iowa Code section 804.14, which describes the manner of making arrests, were enacted together. *State v. Schmitt,* 290 N.W.2d 24, 26 (Iowa 1980); *see also State v. Davis,* 525 N.W.2d 837, 839 (Iowa 1994).

■ Any "arrest" by Transcor fails the test for a valid arrest under Iowa Code chapter 804. It was not based on a warrant (Iowa Code § 804.1); Transcor was not a peace officer (Iowa Code § 804.6); and the "arrest" was not based on a public offense committed in the presence of Transcor (Iowa Code § 804.9). In fact, *any* arrest attempted to be made in Utah by an Iowa agent for an Iowa offense would be void. *See State v. Lyrek,* 385 N.W.2d 248, 250 (Iowa 1986) (warrant of arrest issued in one state may not be executed in another); *Drake v. Keeling,* 230 Iowa 1038, 1043, 299 N.W. 919, 922 (1941) (same). The arrest in Utah by the Utah officer was not in any sense an arrest for the Iowa offense; rather, it was based on Gathercole's status as a fugitive from justice. *See Lyrek,* 385 N.W.2d at 250; 31 Am.Jur.2d *Extradition* §§ 23, at 766; 58, at 790 (1989).

Gathercole does not argue that the arrest by Transcor was a legal arrest on the Iowa charge; he argues that it was *the same as* an arrest because he was restrained by Transcor. We reject this argument for two reasons. First, it would, as a practical matter, render all extradition procedures ineffective if an agent were considered to exercise arrest power simply by physically restraining the fugitive. Such a de facto, but illegal, arrest would immediately entitle the fugitive to be released through habeas corpus. *Cf.* Iowa Code § 820.10 (habeas corpus to test validity of arrest under governor's warrant). Because an agent is an integral part of any extradition, and taking custody of the fugitive would be a part of the transportation to the demanding state in any extradition case, a fugitive could never be returned to a demanding state.

Second, analogous cases dealing with speedy-trial issues have uniformly rejected the argument that a de facto arrest triggers the running of the allowable time for indictment or trial. For example, in *United States v. Harris*, 12 F.3d 735 (7th Cir.1994), the defendant argued that he was "arrested" for speedy-trial purposes when instead of either being transferred to another prison or released back into the general prison population he was kept in segregation. While the facts of *Harris* are not particularly apposite to those of the present case, the court's observation concerning the theory of "de facto" arrests in speedy-trial cases is on point. The court said:

> [T]he [speedy-trial act] is a technical statute and we are reluctant to enlarge it by analogy. *Cases addressing the same question under the speedy-trial guaranty of the Sixth Amendment have uniformly declined to invoke the [de facto arrest] analogy.*

*Id.* at 736 (emphasis added) (citations omitted).

The court in *Harris* continued:

> We ought moreover to distinguish between arrest and confinement. The Act's thirty-day clock runs from arrest, even if the defendant is immediately released with or without bond. Protection against being incarcerated following arrest but before conviction is found elsewhere, for example in the Fourth Amendment, in the due process clause of the Fifth Amendment, and in the excessive-bail clause of the Eighth Amendment. Harris was never arrested in any sense that can be distinguished from incarceration.

*Id.* (citations omitted).

In a case that is closer on its facts, *United States v. Iaquinta*, 674 F.2d 260 (4th Cir. 1982), the defendant was arrested by the state through a joint investigation with federal authorities. The court held that a state arrest did not start the time under federal speedy-trial requirements, despite the fact that the defendant was actually in custody before he was formally arrested by federal authorities. *Id.* at 267–69. The district court had dismissed the case as untimely on the ground that the defendant had been subjected to an earlier de facto arrest by the state. However, the court of appeals reversed, stating that the district court

> treat[ed] the state arrest for purposes of the [speedy-trial] Act as a federal arrest. Neither the language of the Act nor good reasons supports the proposed exception; and *all the authorities which have confronted the issue have ruled against it.*

*Id.* at 264 (emphasis added).

We reject Gathercole's de facto arrest argument under rule of criminal procedure 27(2)(a). Furthermore, under Gathercole's argument that he was confined on February 14, he was still indicted within forty-eight days, and he does not claim he was prejudiced by a three-day delay in indictment. This case, therefore, falls clearly within permissible *constitutional* speedy-trial requirements. *Cf. United States ex rel. Mitchell v. Fairman*, 750 F.2d 806, 810 (7th Cir.1984) (no demonstrable harm from unexplained two-year delay in trial held nonviolative of constitutional speedy-trial rights).

Our conclusion that Gathercole was not "arrested" by Transcor for purposes of the speedy-indictment rule raises the inevitable question: Under whose authority was he arrested at that time? He was obviously not free to go. We believe that until he was returned to Iowa he was under the arrest warrant of the Utah judge before whom he was initially taken under Utah Code section 77–30–15, which is identical to Iowa Code section 820.15.

Under that Code section, a judge or magistrate in Utah is to issue a warrant to hold the accused as long "as will enable the arrest of the accused to be made under a warrant of the governor [of the demanding state]." (In this case, Iowa.) In turn, the Iowa governor would issue a warrant "to some agent, commanding the agent to receive the person ... and convey the person to the proper officer of the county in the state in which the offense was committed [Polk County]." Iowa Code § 820.22; *see also* Utah Code § 77–30–22 (identical language).

When Gathercole waived his extradition rights, we believe he necessarily waived

the procedures relating to the intervening warrant by the Iowa governor. This leaves him under the arrest warrant by the Utah court until he is delivered to the authorities in Polk County.

We recognize that this amounts to giving a limited extraterritorial effect to a warrant by the Utah court, which is inconsistent with the general law of arrest. However, we believe this is the only practical interpretation of the uniform act in those cases in which the accused has waived the issuance of the governor's warrant by waiving his rights to extradition.

We do not believe that the uniform act may be interpreted to place a fugitive in a state of "arrestless" limbo if he waives extradition. Also, if the uniform act is not interpreted to provide authority to hold a fugitive pending delivery to the Iowa authorities, it would mean that a person waiving extradition would have greater rights than one who does not.

In any event, we reject Gathercole's contention that he was placed under arrest by Transcor on February 17, 1994, for purposes of rule 27(2)(a).

█ B. *The search warrant issue.* Gathercole contends that the search warrant was invalid because the State had failed to establish probable cause. Probable cause requires a probability showing of a nexus between the criminal activity, the items to be seized, and the place to be searched. *State v. Godbersen*, 493 N.W.2d 852, 854 (Iowa 1992); *State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987).

█ The quantum of evidence required to show probable cause is less than would be required for conviction but more than mere suspicion of the defendant's involvement. *Weir*, 414 N.W.2d at 330. Our review of this constitutional challenge is de novo. *Id.* at 329. In a close case, however, we give deference to the issuing magistrate's findings, and because of our preference for the use of warrants, resolve doubts in favor of the warrant's validity. *Id.* at 330.

In this case, the search warrant application contained the following information: Two persons were involved in the robbery, one a white male in his thirties, about five feet ten inches tall and weighing approximately 175 pounds with light brown to blonde hair, and the other a black male in his forties. The clerk, who was able to see the white male's face before he pulled on the ski mask, described to the officers a person resembling the one police knew as Gathercole. The information also included the report by Sangster about the car with the black male and white male in it parked closed to the pizza shop at about the time of the robbery. The lights were off. The license number of the car established that it was owned by the defendant's wife.

█ Regarding the required nexus among the crime, the items sought, and the places to be searched, we have held that it is reasonable to infer that stolen property would be found at a defendant's residence. *State v. Iowa Dist. Ct.*, 247 N.W.2d 241, 249 (Iowa 1976). Further, as one authority has noted:

> Perhaps because stolen property is not inherently incriminating in the same way as narcotics and because it is usually not as readily concealable in other possible hiding places as a small stash of drugs, courts have been more willing to assume that such property will be found at the residence of the thief, burglar or robber.

Wayne R. LaFave, *Search & Seizure* § 3.7(d), at 381–82 (3d ed. 1996). In addition,

> [w]here the object of the search is a weapon used in the crime or clothing worn at the time of the crime, the inference that the items are at the offender's residence is especially compelling, at least in those cases where the perpetrator is unaware that the victim has been able to identify him to the police.

*Id.* at 384.

█ Regarding the search of the defendant's person, which revealed the gun, it is reasonable to believe that guns will be kept on the subject's person or in his residence. *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir.1975).

We conclude that a sufficient nexus was established and that the issuance of the warrant was based on probable cause.

■ C. *The use of the tape recorder.* Gathercole complains that the trial court abused its discretion by allowing the jury to use a tape recorder to listen to a tape recording of Gathercole's interview. A transcript of this interview was not admitted at trial, but the tape itself was admitted as a State's exhibit.

The defendant concedes that the trial court is vested with discretion regarding admission of the tape recorder. Criminal procedure rule 18(5)(e) provides in part:

> Upon retiring for deliberations the jury may take with it all papers and exhibits which have been received in evidence, and the court's instructions. *Provided, however, the jury shall not take with it depositions,* nor shall it take original public records and private documents as ought not, in the opinion of the court, to be taken from the person having them in possession.

(Emphasis added.)

The defendant relies on *State v. Baumann,* 236 N.W.2d 361, 365 (Iowa 1975), in arguing that the court abused its discretion in allowing the tape recorder to be used. In *Baumann,* we held that in some respects a tape recording is like a deposition and a court would be justified in treating it as a deposition and denying its use in the jury room.

It is clear, however, that rule 18(5)(e) does not prohibit the use of a tape recorder in the jury room; it specifically limits its proscription to depositions. Furthermore, the *Baumann* case made it clear that, under Iowa Code section 784.1 (1973), the predecessor to present rule 18(5)(e), the court would have been within its discretion to allow the use of the tape recorder in the jury room. We stated that "[w]e believe [the] trial court possessed considerable discretion to either grant or deny the jury's request" to use it. *Baumann,* 236 N.W.2d at 366.

The court did not abuse its discretion in allowing the use of the tape recorder by the jury, and we therefore reject the defendant's third assignment of error.

**AFFIRMED.**

All Justices concur except SNELL and CARTER, JJ., who dissent.

SNELL, Justice (dissenting).

I respectfully dissent.

An unfavorable fact scenario, that stumps the prosecution to explain, sometimes leads to bad law. That has now happened in this case. Our speedy indictment rule allows the prosecution forty-five days to indict an adult after the arrest is made. Iowa R.Crim.P. 27(2)(a). If that time limit is passed, the rule says that "the court must order the prosecution to be dismissed." *Id.* The rule allows for a time extension if "good cause to the contrary is shown or the defendant waives his right thereto." *Id.* But the prosecution's problem here is that the defendant did not waive his right to a speedy indictment and there is no good cause shown for the State's failure to indict.

Of course, the State only missed the deadline from one to three days, counting from when defendant Gathercole was arrested by Utah authorities or from when he was secured by Transcor, the Iowa agent. Since a good cause argument is not available, the majority contends this small delay would not amount to any constitutional prejudice. Thus occurs a misdirection of the legal question, the question of prejudice not being a part of the rule that frames the excuse in terms of "good cause." *See id.*

The critical legal question in this case is "was Gathercole arrested" for purposes of rule 27(2)(a) when the agent of the State of Iowa, Transcor, took possession of him in Utah for delivery to the Polk County, Iowa sheriff? The issue is not, as the majority decides, "does Transcor have the power of arrest in Utah?" In its analysis and conclusion regarding the arresting authority under extradition law and the interstate extradition compact—that Transcor cannot arrest anybody—the majority ignores the Iowa statute that should decide this case. That statute defines what an "arrest" is and states as follows:

Arrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody.

Iowa Code § 804.5 (1993).

The majority speaks of arrest as though it is a concept so universally understood that further discussion is unnecessary. No dictionary definition is given. If it had been, we would have seen the same idea as expressed in section 804.5 of the Code.

Webster's dictionary defines the term arrest:

1. an arresting or being arrested; esp., a taking or being taken into custody by authority of the law.

Webster's New World Dictionary 77 (2d ed. 1986).

Transcor took Gathercole into custody by authority of the law. The interstate extradition compact, as adopted by Iowa, provides:

The local prosecuting authority of the demanding state shall cause a warrant to be issued to an agent, commanding the agent to receive the fugitive when delivered to the agent and convey the fugitive to the proper officer of the local jurisdiction in the demanding state.

Iowa Code § 818.9.

Gathercole was taken into custody by Transcor on February 17, 1994, and transported under the authority of an arrest warrant issued under the jurisdiction of Polk County, Iowa. That arrest warrant was filed in Polk County on February 7, 1994 and charged the defendant with the crime of robbery in the first degree. He was arrested on February 11, 1994 by Utah officers on the Iowa warrant. Nobody suggests that Transcor was acting without authority. He was, by dictionary definition, "arrested" by Transcor officials.

Of even greater persuasion is the language used by the legislature in defining what constitutes an arrest. It defines an "arrest" as including "the restraint of a person" or the "person's submission to custody." *Id.* § 804.5. How has Gathercole not submitted to the custody of Iowa agents when he waives extradition? Waiver of extradition is not just a friendly gesture by a defendant who does not want to be a troublemaker. It is an act of lesser compulsion. How is Gathercole not restrained when he is delivered as a fugitive by Utah police to Iowa police agents for transport to Iowa for trial?

The entire conception of Transcor's taking possession and delivering Gathercole is one of restraint and submission to custody. Thus, the Iowa statutory definition of arrest is met three ways under Iowa Code section 804.5.

The majority notes that our speedy indictment rules, Iowa Rule of Criminal Procedure 27(2) and Iowa Code section 804.14, which describe the manner of making arrests, were enacted together. In support of this assertion, *State v. Schmitt,* 290 N.W.2d 24 (Iowa 1980), is cited. In *Schmitt,* we said that rule 27 and Iowa Code sections 804.5 and 804.14 concerning the arrest and the manner of making an arrest were enacted together and must be construed together. *Schmitt,* 290 N.W.2d at 26. We cited and approved this holding in *State v. Davis,* 525 N.W.2d 837, 839 (Iowa 1994). Being enacted and construed together, section 804.5, which defines what constitutes an arrest, should control the interpretation of our speedy indictment rule 27(2)(a).

We have recently reviewed the purpose and application of Iowa Rule of Criminal Procedure 27(2)(a). In *Davis,* we affirmed the dismissal of the charge against a defendant because the state failed to indict him within forty-five days of his arrest. *Davis,* 525 N.W.2d at 841. The defendant had been arrested, jailed, and was in custody approximately two hours before being released. Later, when the results of a blood test were received, the state retrieved the citation previously issued to defendant and filed it with the clerk of court. The state argued the forty-five-day period started with the filing of the complaint and did not expire until after the trial information was filed. We held, however, the arrest triggered the commencement of the time period which therefore ran out before the indictment was filed. *Id.*

We noted in *Davis* that the officers of the state could have easily complied with the rule. This is also true in the case at bar.

Defendant Gathercole's presence in Polk County, Iowa was not required or even needed for the county attorney to file an information against him. Any time passed in transporting Gathercole from Utah to the Polk County sheriff could not have had any legal effect delaying the filing of a county attorney's information.

After the forty-five days ran, in the absence of a showing of good cause for the state's failure to comply, we held in *Davis* the state's time was up. We said

> An arrest of a citizen is a serious matter. It should not be done unless the peace officer or the state has probable cause to do so. Once an arrest is made, the state should be required to follow through on the time requirements for a speedy indictment and processing of the case pursuant to rule 27(1) and (2). To do otherwise generates disrespect for the law by the authorities.
>
> It also threatens abuse of citizens' rights....
>
> ....
>
> The forty-five day period under rule 27(2)(a) runs from the date defendant is arrested, unless the state shows good cause for the late filing of the trial information or defendant waives the right to have it timely filed. It would take legislative action to effect a different starting date.

*Davis*, 525 N.W.2d at 840–41.

In *Davis* the state did not contend that good cause had been shown for a late filing of the trial information or that defendant had waived his right to have it timely filed. In deciding *Davis*, we overruled *State v. Van Beek*, 443 N.W.2d 704 (Iowa 1989), and disavowed its analysis. We said

> *Van Beek* seems to be bottomed on allowing "prosecutorial discretion" not to timely file a trial information within forty-five days after the defendant was arrested. There is no Iowa Code authority nor any provision in rule 27(2)(a) to allow such discretion.

*Davis*, 525 N.W.2d at 840 (citations omitted).

The statutory definition of arrest in section 804.5 and our cases embrace the concept of "in custody." If a defendant is in custody, restrained, or submits to custody, the requirements of an arrest are satisfied. *See State v. Smith*, 546 N.W.2d 916, 922 (Iowa 1996). A custodial arrest for purposes of speedy indictment was examined by our court of appeals in *State v. Beeks*, 428 N.W.2d 307, 309 (Iowa App.1988). The court noted that a person not in the custody of county authorities is not arrested by the mere bringing of a charge in that county. *Beeks*, 428 N.W.2d at 309. The court then stated

> We agree with the trial court that defendant was not arrested on the Story County charges until he submitted to the custody of the Story County sheriff on March 4, 1987. Defendant was under arrest on the Hamilton County charges while he was detained at the Webster County jail.

*Id.* Defendant was arrested for purposes of the speedy indictment rule when he submitted to the custody of the Story County sheriff on March 4, 1987.

In *State v. Lyrek*, 385 N.W.2d 248, 249 (Iowa 1986), the defendant was arrested in Minnesota by Minnesota officers after committing a robbery in Iowa and failing to appear for a DWI charge in Minnesota. Formal extradition proceedings were initiated by the State of Iowa, and the defendant then waived extradition. The following day an Iowa deputy sheriff picked up the defendant and transported him to Iowa. When the defendant moved to dismiss on the basis he was arrested in Minnesota more than forty-five days prior to the state's filing of the trial information, the state argued the date of arrest was the date the defendant was taken into custody in Minnesota by the Iowa deputy. *Lyrek*, 385 N.W.2d at 250.

After explaining the principles underlying the limitations of power to arrest a person for crimes committed in another state, we held the defendant was not arrested for the purposes of rule 27(2)(a) until he was taken into custody in Minnesota by the Iowa deputy. *Id.* Therefore dismissal was inappropriate as the trial information was filed within the forty-five-day window.

Other cases have held that the rule is triggered by the taking into custody by Iowa

officers on the crime charged even though the defendant is already in custody on another charge. *See State v. Boelman*, 330 N.W.2d 794, 795 (Iowa 1983) (defendant in jail on unrelated probation violation was arrested when deputies served her with arrest warrant on a new charge); *State v. Eichorn*, 325 N.W.2d 95, 96–97 (Iowa 1982) (when authorities bring an additional charge against a person already in custody, the time of arrest for purposes of rule 27(2)(a) only relates to the offense for which the defendant was charged).

This analysis is also appropriate in the present case. As an initial matter, an arrest warrant has no effect outside the boundaries of the state from which it issued. *Drake v. Keeling*, 230 Iowa 1038, 1044, 299 N.W. 919, 922 (1941). However, in *Keeling* we held Iowa deputy sheriffs taking custody of a defendant in Nebraska, pursuant to an Iowa arrest warrant, act by virtue of office and by color of office and are liable along with their sureties for false arrest. *Id.* Furthermore, the State of Utah was not without authority to arrest Gathercole. Rather, the State of Utah arrested Gathercole as a fugitive from justice, as is provided for in the Uniform Criminal Extradition Act as adopted by both the Iowa and Utah legislatures. *See* Iowa Code ch. 820; Utah Code Tit. 77, ch. 30; U.S. Const. art. IV, § 2.

In the present case, Gathercole could not have been arrested for the Iowa robbery when he was arrested by Utah authorities, as they had no authority to do so. The question then becomes whether Gathercole was arrested when he was picked up by Transcor or whether he was not arrested until he reached Polk County. The defendant relies on *Lyrek* to argue he was arrested when he was first taken into custody by Transcor, an agent of Iowa. The State maintains he was not arrested until he reached Polk County.

The Uniform Criminal Extradition Act provides

> Any person arrested in this state charged with having committed any crime in another state ... may waive the issuance and service of the warrant ... by executing or subscribing ... a writing which states that the person *consents to the return to the demanding state.*

Iowa Code § 820.25 (emphasis added); *see also* Utah Code § 77–30–25 (1953).

Once this waiver is completed, the act provides it shall be forwarded to the office of the governor of the asylum state and the judge "shall direct the officer having such person in custody to deliver forthwith such person to the duly accredited agent or agents of the demanding state...." Iowa Code § 820.25; *see also* Utah Code § 77–30–25. Thus the waiver of extradition process itself contemplates delivery of the defendant to an *agent* of the demanding state. Several sections of the Iowa Code also contemplate arrests by persons other than police officers. *See* Iowa Code § 804.6 (providing an arrest by warrant may only be made by a peace officer; in other cases arrests may be made by private persons as provided in the chapter); § 804.9 (providing a private person may make an arrest for an offense committed in his presence or with a reasonable belief a felony has been committed); § 804.10 (providing the standard to determine the appropriate force a private person is entitled to use when making an arrest); § 804.24 (providing the private person must deliver the arrestee to a peace officer or a magistrate without delay).

The majority's analysis of the wrong issue, *i.e.*, whether Transcor has the power to make an arrest in Utah, leads it into an analytical inconsistency. It bases its entire analysis on Iowa's agents having no power of arrest in Utah but then admits it must give Utah agents extraterritorial arresting power in Iowa. This is inconsistent with the general law of arrest, the majority concedes, but it is a practical necessity in order to get Gathercole back to Iowa under some state's authority.

The majority's analysis is not needed when the focus is on the proper issue, *i.e.*, whether an arrest, as defined by Iowa Rule of Criminal Procedure 804.5, has been effected by Transcor's authorized act, as an agent of the State of Iowa, for purposes of our speedy indictment rule.

Under the authority of our statutory language, the *Lyrek* analysis, and our cases interpreting arrest, therefore, Gathercole was arrested when Transcor first obtained custody of him to transport him to Iowa on February 17, 1994. Because the State failed

to file the trial information until April 5, 1994, *forty-six* days later[1] and one day beyond the allowable time for indictment of defendant under Iowa Rule of Criminal Procedure 27(2)(a), the defendant's motion to dismiss should have been granted.

In *State v. O'Bryan,* 522 N.W.2d 103, 106 (Iowa App.1994), our court of appeals held the charge against the defendant should have been dismissed because of a failure by the state to file a timely indictment. The state tried to justify a good cause excuse by charging time to the defendant because of his failure to appear after being given a citation. In finding this was not good cause, the court said, "The arbitrary forty-five-day limit cannot be violated, even 'a little bit' without a showing of good cause." *O'Bryan,* 522 N.W.2d at 106 (cited with approval in *Davis,* 525 N.W.2d at 840).

Because the forty-five-day limit imposed under our speedy indictment rule, Iowa Rule of Criminal Procedure 27(2)(a), was violated by the State, I would reverse and remand for dismissal of the prosecution charges against defendant Gathercole.

---

1. Forty-five days from February 17 is April 3, which in 1994 fell on a Sunday. By operation of Iowa Code § 4.1(34), the rule for computation of time, the prescribed time period is extended to the next non-holiday weekday. Thus, the final day for filing the trial information within the forty-five-day window was Monday, April 4, 1994. The State did not file it until Tuesday, April 5, 1994.