HECHT, Justice
(dissenting).
I believe the court of appeals correctly applied settled law requiring a speedy indictment, Finding. no persuasive ground for reversing a long line of our cases interpreting Iowa Rule of Criminal Procedure 2.33(2)(a), I respectfully dissent.
The majority correctly notes that prior to January 1, 1978, the state’s deadline for indicting a person suspected of committing a crime ran from the date the person was “held to answer.” See Iowa Code § 795.1 (1975). In other words, prior to 1978 the speedy indictment clock began to run upon a finding of probable cause that an offense was committed and the accused committed it. In what the majority describes as “a comprehensive review and major overhaul” of the Iowa Criminal Code that became effective in 1978, the legislature significantly changed the language upon which the speedy indictment rule is based.
The former “held to answer” formulation for the commencement of the indictment timeline was deleted by the legislature-in the new rule 27(2)(a). Under the new rule, the arrest was chosen as the event from which the indictment deadline is measured. We first had occasion to interpret the new formulation of the speedy indictment rule in State v. Schmitt, 290 N.W.2d 24 (Iowa 1980). In that case, Schmitt was in custody awaiting trial on a burglary charge. Id. at 25. He escaped from custody on October 18, 1978, but was found by a law enforcement officer later the same day, detained at gunpoint, handcuffed, and returned to jail. Id. at 26. More than ninety days passed before the state filed a new information charging Schmitt with the crime of escape from custody. Schmitt filed a motion to dismiss, contending the charge was untimely because it was not filed within forty-five days after he was arrested. Id. at 25.
On appeal from the district court’s ruling denying the motion to dismiss, we focused on the textual difference between the former “held to answer” language in section 795.1 and the new speedy indictment timeline commencing under rule 27(2)(a) with an “arrest,” We concluded the textual difference was significant and consequential.
The terms are not synonymous. As previously stated, “arrested” means being physically taken into custody in the manner authorized by law. Formerly, physical restraint was, irrelevant to a determination of whether the defendant had been “held to answer.” Rather, the term was narrowly defined to mean being held to answer by a preliminary examination or waiver of same.
Id. at 27 (citation omitted). Noting the obvious textual difference between the language in the former section 795.1 and the *871 language in the new rule 27(2)(a), we concluded the information charging Schmitt with escape from custody was untimely because it was filed more than forty-five days after Schmitt’s arrest on October 18, 1978. Our decision in Schmitt was based on the unambiguous text of the rule; it was faithful to the general principle that a modification of the language of a statute gives rise to a presumption that a change in the law was intended. See Midwest Auto. III, LLC v. Iowa Dep’t of Transp,, 646 N.W.2d 417, 425 (Iowa 2002); State v. Ahitow, 544 N.W.2d 270, 273 (Iowa 1996); see also 1A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 22.1, at 245-47 (7th ed. 2009),[4]
In a series of cases decided after Schmitt, this court performed its proper appellate role—interpreting and applying the statutory definitions of arrest found in Iowa Code sections 804.6 and 804.14 to various and sundry fact patterns presenting speedy indictment claims. See State v. Wing, 791 N.W.2d 243, 247-52 (surveying and synthesizing this court’s opinions interpreting “arrest” in the speedy indictment context). In each of those cases, we applied rule 27(2)(a) or its successor, rule 2.33(2)(a), as they were written by the legislature. In each instance, we focused faithfully on the text of the rule and decided whether an information was filed within the timeline provided by law under the circumstances.
The majority abruptly changes course in this case, turning the clock back to the pre-1978 formulation of the rule. Concluding this court got it wrong in Schmitt, the majority decides today that an arrest for purposes of the speedy indictment rule does not occur until one is held to answer. I disagree for several reasons.
The first reason is based on the text of the rule. The plain language of rule 2.33(2)(a) does not include the “held to answer” doctrine that was put to rest by the legislature in 1978. Well-established rules counsel against resuscitation. Our role is “to interpret our rule according to the legislative intent as revealed by the language of the rule.” State v. Dullard, 668 N.W.2d 585, 595 (Iowa 2003). In performing our interpretive role, “[w]e determine legislative intent from the words chosen by the legislature, not from what it should or might have said. Auen v. Alcoholic Beverages Div., 679 N.W.2d 586, 590 (Iowa 2004). It is not our role to extend, enlarge, or otherwise change the meaning of a statute under the guise of construction. Id, We do not divine innovations or make improvements when interpreting the legislature’s work; rather, we interpret it as we find it. State v. Spencer, 737 N.W.2d 124, 129-30 (Iowa 2007). In my view, my colleagues in the majority give too little attention to these rules limiting our interpretive license in restoring the “held to answer” framework abandoned nearly forty years ago by the legislature.
Second, we have decided numerous speedy indictment cases in the thirty-seven years since Schmitt was decided. See Wing, 791 N.W.2d at 247-52 (surveying cases interpreting “arrest” in the-speedy indictment context). Notably, the legislature took no corrective action in the intervening decades suggesting we misunderstood its intention as- we repeatedly *872 measured the indictment deadline from the time of the arrest. This scenario is a textbook scenario for application of the doctrine of legislative acquiescence. See Ackelson v. Manley Toy Direct, L.L.C., 832 N.W.2d 678, 682, 688 (Iowa 2013) (considering legislature’s inactivity over twenty-seven-year period in response to our decisions holding the Iowa Civil Rights Act did not implicitly permit recovery of punitive damages); State v. Abrahamson, 746 N.W.2d 270, 277 (Iowa 2008) (“The legislature’s failure to amend the statute to enumerate multiple offenses suggests our understanding of the statute comports with the intent of the drafters.”); Iowa Dep’t of Transp. v. Soward, 650 N.W.2d 569, 574 (Iowa 2002) (legislative inaction in response to this court’s interpretation of a statute given considerable weight). If we misunderstood its intent in Schmitt or in our many other subsequent decisions measuring the indictment deadline from the point of arrest during the past three-and-one-half decades, surely the legislature would have taken corrective action. Because the legislature did not take such action, my confidence that we got it right in Schmitt is all the stronger.[5]
Third, this case starkly illustrates that if being “held to answer” is the trigger for the speedy indictment clock, a perverse incentive arises for law enforcement officers to delay prosecutions—conduct that is antithetical to the important goals of speedy trials. See State v. Delockroy, 559 N.W.2d 43, 46 (Iowa Ct. App. 1996) (noting the purpose of procedural rules and constitutional provisions implementing speedy trial rules is to “relieve an accused of the anxiety associated with suspended prosecution and provide reasonably prompt administration of justice”). The acts that led to the sexual assault charges against Deantay Williams and two other men occurred in the early morning hours of June 10, 2012. Williams and the others were taken into custody, handcuffed, and taken to the police station for interrogation that same morning. Williams and one of the others admitted during the interrogations that they had engaged in sexual intercourse with two fifteen-year-old girls who reported they had been raped. Yet, the informations charging the three defendants were filed 510 days later. Although the State claims the delay in filing the charges was attributable to the slow pace of DNA testing, the identity of Williams and one of the other defendants as participants in the alleged sexual abuse of both girls was not in dispute from day one. During the long delay of 510 days, evidence likely grew stale and memories faded while Williams and the others waited, uncertain whether the prosecutions would go forward. See State v. Olson, 528 N.W.2d 651, 654 (Iowa Ct. App. 1995) (acknowledging that impairment of an accused’s defense due to diminished memories and loss of exculpatory evidence is considered the most serious form of prejudice arising from delayed prosecutions).
The plain language interpretation of rule 2.33(2)(a) applied by this court for more than three decades and relied upon by the court of appeals in this case encouraged prompt prosecutions and promoted the goals of speedy trials guaranteed by the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. I would not abandon it. Accordingly, I would affirm the decision of *873 the court of appeals and remand to the district court for entry of a ruling dismissing the charges.
Wiggins and Appel, JJ., join this dissent.

. The majority cites a cryptic passage from an article written by Professor Yeager and Professor Carlson suggesting they intended no significant changes of the speedy indictment provisions in the Criminal Code overhaul enacted during the 1976 legislative session. In assessing the meaning of rule 27(2)(a), now rule 2.33(2)(a), and the legislative intent behind it, I give great weight to the words actually appearing in the rule, and substantially less weight to the post-hoc characterizations of intent offered up by the professors.

. The legislature's acquiescence in our interpretation of the rule adds force to my view expressed above in note 1 that the actual words enacted by the legislature in rule 2.33(2)(a) should be our polestar—not the summary characterization of the professors who assisted in the drafting.