# IN THE SUPREME COURT OF IOWA

No. 14–0793

Filed May 25, 2017

Amended August 7, 2017

**STATE OF IOWA,**

Appellee,

vs.

**DEANTAY DARELLE WILLIAMS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

The State of Iowa seeks further review of a court of appeals decision on discretionary review reversing the district court's denial of Deantay Williams's motion to dismiss. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**

Cory Goldensoph, Cedar Rapids, and James M. Metcalf, Waterloo, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Kevin Cmelik, and Alexandra Link (until withdrawal), Assistant Attorneys General, and Brian J. Williams and Tom Ferguson (until withdrawal), County

Attorneys, and Linda M. Fangman (until withdrawal), Assistant County Attorney, for appellee.

Alan R. Ostergren, Muscatine, for amicus curiae, Iowa County Attorneys Association.

**CADY, Chief Justice.**

In this case, we consider whether the speedy indictment rule requires the dismissal of a trial information against a defendant filed more than forty-five days after the defendant was taken into custody, interrogated, and released without the filing of a criminal complaint. The district court held the rule did not require the charges to be dismissed. The court of appeals, relying on case precedent, reversed the district court. On further review, we vacate the court of appeals and affirm the district court. We conclude the speedy indictment rule is properly interpreted to commence upon arrest only when the arrest is completed by making an initial appearance.

## I. Factual Background and Proceedings.

This case comes before us on further review. The court of appeals, on discretionary review of the district court's denial of the defendant's motion to dismiss, reversed the district court and dismissed the charges against Deantay Williams, Taevon Washington, and Cordarrel Smith. On this further review, we focus solely on whether the defendants' rights were violated by the failure to bring formal charges against these defendants within forty-five days of their arrest. This case is submitted and decided together with *State v. Washington*, No. 14–0792, 2017 WL 22900095, at *1 (Iowa May 25, 2017), and *State v. Smith*, No. 14–0812, 2017 WL 2291377, at *1 (Iowa May 25, 2017), which arise out of the same facts.

At approximately 5:30 a.m. on June 10, 2012, the Waterloo Police Department responded to a call reporting a sexual assault. Officers met with L.M., a minor. L.M. told the officers she had been repeatedly sexually assaulted at a nearby house. L.M. told the officers her friend, J.K., also a minor, was assaulted and was likely still inside the house.

Officers went to the house and set up surveillance. They considered the house a "gang hang out," possibly with weapons inside. An officer took L.M. to a hospital for examination.

At approximately 7:15 a.m., Deantay Williams, age seventeen, exited the house. An officer stopped Williams, placed handcuffs on him, and conducted a pat-down search. The officer found a marijuana pipe in a pocket. The officer told Williams he was being detained, placed him in the back of a squad car, and drove him back to the house.

A short time later, numerous officers entered the front door of the house with weapons drawn. They found seven occupants in the living room and bedrooms, including Taevon Washington and Cordarrel Smith, as well as two other males and three females. Officers also entered the basement and found J.K sitting on a mattress, crying. An officer promptly took her to a hospital. The police took the other occupants of the house into custody and transported them to the Waterloo police station.

Williams, Washington, and Smith were separated, read their *Miranda* rights, and questioned by officers. Williams and Washington admitted they had sexual intercourse with L.M. and J.K., but stated it was consensual. Smith denied any sexual contact with L.M. or J.K. A fourth male admitted to sexual contact with J.K., confirmed Washington and Williams had sexual contact with J.K., and confirmed Williams had sexual contact with L.M. Police asked each male to consent to buccal and penile swabs. Williams and Smith consented. Washington refused, and police obtained a search warrant to perform the swabs. The police then released each person from custody. L.M. and J.K. were discharged from the hospital later that day after being examined and completing sexual assault testing. No criminal complaints were filed.

On October 21, 2013, police obtained arrest warrants for Williams, Washington, Smith, and the fourth male and charged them with sexual abuse in the second degree. Police arrested Smith and the fourth male on October 24, Williams on October 28, and Washington on October 29. After each person was taken into custody, they were taken before a magistrate to make an initial appearance.

On November 1, 2013, now 510 days after the initial events, a Black Hawk County attorney filed a trial information accusing Williams, Washington, Smith, and the fourth male with sexual abuse in the second degree under Iowa Code section 709.3(3) (2011).[1] The fourth male pled guilty. Williams, Washington, and Smith filed a motion to dismiss for violation of their speedy indictment rights. The district court held a hearing and denied the motions. The district court drew a distinction between an arrest under the Fourth and Fourteenth Amendments and an arrest under our speedy indictment rule. Williams, Washington, and Smith filed for discretionary review. In the meantime, the State filed amended charges against Williams, Washington, and Smith. We granted the requests for discretionary review, stayed the proceedings before the district court, and transferred the cases to the court of appeals. Williams moved to dismiss the amended charges. This motion was denied, and he applied for discretionary review. We granted the application and consolidated his appeals. The court of appeals reversed the district court decisions, found Williams's rights were violated under the speedy indictment rule, and remanded the case for dismissal of the November 1, 2013 trial information and the amended charges. The court of appeals

---

[1]Except where otherwise noted, references to the Iowa Code are to the 2011 edition.

relied on case precedent interpreting the speedy indictment rule to find the time to file an indictment commenced on June 10, 2012, when Williams reasonably believed he had been arrested. We granted further review.

## II. Stare Decisis.

We begin by considering our devotion to stare decisis. We do so because our existing caselaw can be applied to quickly resolve this case. *See State v. Wing*, 791 N.W.2d 243, 249 (Iowa 2010). Yet, this caselaw is being challenged as incorrect. Accordingly, we must consider the claim. *See State v. Johnson*, 257 Iowa 1052, 1056, 135 N.W.2d 518, 521 (1965) ("[H]igh courts have not only the right but the duty to change a past decision if it is erroneous . . . ."). We adhere to our past cases as precedence, but we overturn the precedent if found to be clearly erroneous. *See McElroy v. State*, 703 N.W.2d 385, 394–95 (Iowa 2005). We identified the reasons for this hesitance sixty years ago, stating, "Legal authority must be respected; not because it is venerable with age, but because it is important that courts, and lawyers and their clients, may know what the law is and order their affairs accordingly." *Stuart v. Pilgrim*, 247 Iowa 709, 714, 74 N.W.2d 212, 216 (1956). However, "[s]tare decisis 'should not be invoked to maintain a clearly erroneous result.'" *State v. Liddell*, 672 N.W.2d 805, 813 (Iowa 2003) (quoting *Miller v. Westfield Ins.*, 606 N.W.2d 301, 306 (Iowa 2000)). The State asserts dismissal of the charges here is such a result, arguing that our line of cases interpreting the speedy indictment rule is inconsistent with

legislative intent.[2]  Thus, we proceed to consider if compelling reasons exist to overturn our prior interpretation.

### III.  Standard of Review.

We review interpretations of the speedy indictment rule for errors at law.  *See State v. Penn-Kennedy*, 862 N.W.2d 384, 386 (Iowa 2015). "We are bound by the findings of fact of the district court if they are supported by substantial evidence." *Id.* (quoting *Wing*, 791 N.W.2d at 246).

### IV.  Analysis.

This case follows a growing line of cases beginning in 1980 that has addressed the dismissal of criminal charges after an arrest for failing to comply with Iowa's speedy indictment rule.  *See, e.g., id.* at 389–91; *Wing*, 791 N.W.2d at 248–51; *State v. Dennison*, 571 N.W.2d 492, 494–95 (Iowa 1997); *State v. Schmitt*, 290 N.W.2d 24, 26–27 (Iowa 1980).  This rule has its roots in the more comprehensive right to speedy trial guaranteed under the United States and Iowa Constitutions.  U.S. Const. amend. VI; Iowa Const. art. I, § 10; *see State v. Gebhart*, 257 Iowa 843, 847, 134 N.W.2d 906, 908 (1965), *overruled on other grounds by State v. Johnson*, 217 N.W.2d 609, 612 (Iowa 1974), *and State v. Gorham*, 206 N.W.2d 908, 913 (Iowa 1973).  It has been part of the criminal procedure of this state since 1851.  *See* Iowa Code § 3248 (1851).  As a part of the

---

[2]Williams responds first that the State failed to preserve error on this issue. This argument fails, as it would make little sense to require a party to argue existing law should be overturned before a court without the authority to do so.  *See State v. Eichler*, 248 Iowa 1267, 1270, 83 N.W.2d 576, 578 (1957) ("[I]t is the prerogative of this court to determine the law, and we think that generally the trial courts are under a duty to follow it as expressed by the courts of last resort . . . ."); *see also Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 121 (Iowa 1973) ("If trial courts venture into the business of predicting when this court will reverse its previous holdings . . . they are engaged in a high-risk adventure which we strongly recommend against.").

broader right to a speedy trial in all criminal cases, the rule specifically addresses the time frame in which formal charges must be brought against an accused and requires the case be dismissed for noncompliance. *See* Iowa R. Crim. P. 2.33(2)(*a*).

From 1851 to 1978, the statutory window of time to file an indictment under Iowa law commenced from the time the defendant was "held to answer." *See* Iowa Code § 3248 (1851); *id.* § 795.1 (1975). The rule provided, "When a person is held to answer for a public offense, if an indictment be not found against him within thirty days, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown." *Id.* § 795.1 (1975).

The caselaw that inevitably develops around any rule or statute declared "held to answer" was a separate event from an "arrest." *See State v. Mays*, 204 N.W.2d 862, 866–67 (Iowa 1973). We consistently determined the legislature intended the phrase "held to answer" to refer to that stage in the court process following an arrest when a magistrate makes a determination that there is probable cause the offense was committed and the accused committed the offense, or the time the defendant elected to waive this preliminary hearing. *See id.* In other words, the speedy indictment time period was tied to the fundamental probable-cause determination required under our law for the state to prosecute a person arrested and accused of a crime. *See State v. Morningstar*, 207 N.W.2d 772, 774 (Iowa 1973) ("After preliminary examination showing sufficient reason to commit the accused, or on waiver by the accused, the magistrate orders that the accused be 'held to answer.'" (quoting Iowa Code § 761.18 (1973))). Without probable cause, no criminal prosecution in Iowa can take place. *See* Iowa R. Crim. P. 2.2(4)(*e*). Instead, the court must dismiss the complaint. *Id.* Without

probable cause, the defendant is discharged and is no longer "held to answer."

Accordingly, the speedy trial rule in Iowa operated in two stages. If an indictment was not found against the defendant within thirty days after the defendant was "held to answer," the prosecution was required to be dismissed, absent good cause to the contrary or waiver. Iowa Code § 795.1 (1975). The speedy trial rule next required that trial be held sixty days after indictment, absent good cause. *Id.* § 795.2. Together, the rules implemented the constitutional speedy trial protection by defining the inherent "indefiniteness in the meaning of the term." *Pines v. Dist. Ct.*, 233 Iowa 1284, 1290–91, 10 N.W.2d 574, 578 (1943), *overruled on other grounds by Gorham*, 206 N.W.2d at 913; *see also State v. Satterfield*, 257 Iowa 1193, 1195–96, 136 N.W.2d 257, 258 (1965) (noting the rules "represent protection for one who is charged by a preliminary information, that he must be indicted promptly; and for one who is indicted, that he be given a speedy trial"). Over time, the rules were modified to extend the time frames, and an additional rule was enacted to require the case be dismissed if not tried within one year after the original arraignment, absent good cause. *See* Iowa R. Crim. P. 2.33(2)(*a*)–(*c*).

Two additional events occurred that substantially shaped the speedy trial landscape. First, the preliminary examination process to determine the existence of probable cause in a criminal proceeding began to fall into relative obscurity. *See* Charles A. Pulaski, *Preliminary Examinations in Iowa: The Constitutional Considerations*, 60 Iowa L. Rev. 462, 469–70 (1975) ("[T]he short term benefits to be derived from bypassing the preliminary examination have prompted a majority of Iowa county attorneys to employ the true information procedure in most

cases. . . . [M]ost contemporary trial courts appear to welcome the efficiency . . . .").  If a defendant did not waive the preliminary hearing, the prosecutors would routinely file a trial information to avoid the necessity of the hearing.  *See id.*; *see also State v. Clark*, 258 Iowa 254, 257, 138 N.W.2d 120, 122 (1965) ("As to the complaint that no preliminary hearing was provided, none was necessary.  A county attorney's information had been filed. . . .  The procedure does not contemplate a preliminary hearing.").  The endorsement by a judge on the trial information established a finding of probable cause, obviating the need for a hearing.  *See State v. Shank*, 296 N.W.2d 791, 792 (Iowa 1980).  Thus, while the preliminary examination process still existed as part of the criminal process, it was rarely used.

By the early 1970s, a second event emerged in Iowa to impact the development of the speedy indictment rule.  By this time, pretrial delay in criminal cases had been identified as a growing problem across the nation, and states were beginning to respond with various reform measures.  *See* Anthony Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* 11 (1980) (identifying twin goals of the Speedy Trial Act: "clarifying the rights of defendants" and "protecting society's interest in bringing criminals to justice promptly"); Standards Relating to Speedy Trial 1 (Am. Bar Ass'n Tentative Draft 1967) ("Congestion in the trial courts of this country . . . is currently one of the major problems of judicial administration.").  This concern reached Iowa and was in part responsible for a comprehensive review and major overhaul of the Iowa Criminal Code in 1976.  Part of the overhaul included the speedy indictment rule.  Effective in 1978, the legislature changed the triggering language of the rule from "held to answer" to "arrest."  *See* 1976 Iowa

Acts ch. 1245, ch. 2, § 1301 (rule 27(2)(*a*)) (now codified as amended at Iowa R. Crim. P. 2.33(2)(*a*)).  The amended provision provided,

> When a person is arrested for the commission of a public offense and an indictment is not found against him or her within forty-five days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives his or her right thereto.

Iowa Code § 813.2 (rule 27(2)(*a*)) (Supp. 1977).  At the time, the principal authors behind the Code revisions wrote that the speedy trial revisions did not express substantive changes, but resulted in "an approach not dissimilar from [the former rules]."  *See* 4 John L. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law and Procedure* § 1242, at 298–99 (1979).

Our first opportunity to interpret the revised speedy indictment rule came in 1980.  Without mentioning the view of the principal authors, we took a different position.

In *Schmitt*, the defendant escaped from a county jail where he was awaiting trial on the charges of burglary and possession of burglary tools.  290 N.W.2d at 25.  He was captured a few hours later by police officers.  *Id.* at 26.  An officer handcuffed him at the scene of the capture, placed him in a squad car, and returned him to the jail facility.  *Id.*  He was not separately booked and processed on a charge of escape and was not brought before a magistrate on any charge.  *Id.*  Instead, he was simply returned to his cell to continue to await trial on the burglary and possession of burglary tools charges.  *Id.*

More than forty-five days after the escape and capture, the county attorney filed a trial information charging the defendant with escape.  *Id.* at 25–26.  The defendant subsequently moved to dismiss the charge under the speedy indictment rule on the grounds that it was filed more

than forty-five days after he had been arrested for that charge. *Id.* The defendant claimed he was arrested when captured, and this event triggered the new speedy indictment rule. *Id.*

We rejected the State's argument that no "arrest[] for the commission of a public offense" occurs under the new speedy indictment rule when no criminal complaint alleging the commission of a public offense is filed against the arrested person and the person is not brought within the court process designed to adjudicate the complaint. *Id.* at 26–27. Instead, we held the statutory change in the speedy indictment rule revealed a legislative intent to expand the former speedy indictment rule by using the moment a person is taken into custody as the only triggering event, even if the arrested person is not subsequently brought into the court process to answer to a criminal charge pursuant to the rules of criminal procedure. *Id.* at 27. We reached this conclusion by relying on the statutory definition of "arrest" under Iowa Code section 804.5 (Supp. 1977), and the statutory requirements that follow an arrest under Iowa Code section 804.14. *Id.* at 26–27. Under section 804.5, an arrest means taking a person into custody "when and in the manner authorized by law." Iowa Code § 804.5. Section 804.14 normally requires the person making the arrest to inform the person of the intent to arrest, the reason for the arrest, and the identity of the person making the arrest as a police officer. *Id.* § 804.14. We found the phrase "in the manner authorized by law" within the definition of an arrest under section 804.5 only referred to the manner or requirements of making an arrest within section 804.14. *Schmitt,* 290 N.W.2d at 26. We implicitly rejected the notion that taking a person into custody in the manner authorized by law included the other statutory provisions governing an arrest, such as the requirement for the arresting officer to take the

person before a magistrate. *Id.* at 26; *see also* Iowa Code §§ 804.21, .22 (Supp. 1977). Instead, we stated that "the lack of follow-up of booking or charges does not eradicate the event or nullify it as an arrest." *Schmitt,* 290 N.W.2d at 26.

The speedy indictment cases that followed *Schmitt* have dealt with the impact of various collateral circumstances that can accompany an arrest. *See, e.g., Wing,* 791 N.W.2d at 252–53 (applying rule to a brief arrest at the scene of an automobile stop followed by release of custody with a plan that the person would become a confidential informant). With inconsistent results, these cases have also dealt with circumstances to support an arrest, including circumstances like those in this case in which a person is taken into custody, interrogated, and released from custody without the filing of a criminal complaint. *See State v. Rains,* 574 N.W.2d 904, 910–11 (Iowa 1998) (holding arrest does not occur under the speedy indictment rule when the suspect is shot by a police officer, detained at the scene, and guarded at a hospital); *Dennison,* 571 N.W.2d at 496–97 (holding arrest does not occur under the speedy indictment rule when police have authority to detain a person by transporting the person to the police station to invoke the implied-consent procedures); *State v. Gathercole,* 553 N.W.2d 569, 571–74 (Iowa 1996) (holding an arrest does occur under the speedy indictment rule when a defendant who waived extradition was served with an arrest warrant after being returned to Iowa, but not when taken into custody in the other state by an extradition agent); *State v. Davis,* 525 N.W.2d 837, 840–41 (Iowa 1994) (holding the speedy indictment rule applies to defendants who are arrested and released to allow police to conduct the investigation); *State v. Van Beek,* 443 N.W.2d 704, 706–07 (Iowa 1989) (holding that the unconditional release of drug offense suspects after an

arrest did not violate speedy indictment rule), *overruled by Davis*, 525 N.W.2d at 839; *State v. Lasage*, 523 N.W.2d 617, 620 (Iowa Ct. App. 1994) (holding that the unconditional release of a murder suspect did not violate speedy indictment rule). These cases have also excluded from the speedy indictment rule any new charges brought more than forty-five days after an arrest for a different offense, even though the new charges arose from the same incident. *See Penn-Kennedy*, 862 N.W.2d at 389; *State v. Lies*, 566 N.W.2d 507, 509 (Iowa 1997); *State v. Sunclades*, 305 N.W.2d 491, 494 (Iowa 1981).

At times, we did rely on the statutory manner of making an arrest under section 804.14 to determine if the speedy indictment rule was triggered. *See Dennison*, 571 N.W.2d at 495; *Gathercole*, 553 N.W.2d at 572; *Davis*, 525 N.W.2d at 839. Each time, however, we failed to further identify the other statutory requirements essential to completing the manner of arrest.

Overall, our approach to the application of the speedy trial rule since *Schmitt* has been nuanced and subject to criticism. *See* 4A B. John Burns, *Iowa Practice Series™: Criminal Procedure* § 7:3, at 84–91 (2016). Moreover, Iowa stands as the only jurisdiction in the country to interpret its speedy indictment rule to rely solely on the moment of arrest to trigger the rule.[3] Additionally, it has created an inconsistency in the

---

[3]First, not all jurisdictions provide a statutory right to speedy indictment. *See, e.g.*, *State v. Hughes*, 605 A.2d 1062, 1066–67 (N.H. 1992) (abandoning court-imposed "sixty-day rule" for speedy indictment and adopting balancing approach in the absence of statutory mandate). Where there are speedy indictment statutes, a number of jurisdictions measure the time, as we used to, from the defendant's preliminary hearing or a waiver thereof. *See* Cal. Penal Code § 1382 (West, Westlaw current with urgency legis. through ch. 9 of 2017 Reg. Sess.); Md. R. Crim. P. § 4-102 (West, Westlaw current through legis. effective May 4, 2017); Mont. Code Ann. § 46-11-203(1) (West, Westlaw current with amendments received through Sept. 1, 2016); Nev. Rev. Stat. Ann. § 173.035(3) (West, Westlaw current through the 79th Reg. Sess. (2017)); N.M. R. Crim. P. 5-201(C) (West, Westlaw current with amendments received through Feb. 1, 2017);

rule so that adult offenders have the benefit of the "arrest" rule, while juvenile offenders must await transfer to adult court before they may assert speedy indictment protections, regardless of how long prior they were subjected to an arrest. *See State v. Harriman*, 513 N.W.2d 725, 726 (Iowa 1994); *Bergman v. Nelson*, 241 N.W.2d 14, 15 (1976); *State v. White*, 223 N.W.2d 173, 176 (Iowa 1974).

In *Wing*, we rejected the suggestion to change course and align the meaning of "arrest" under our speedy indictment rule with the federal speedy indictment rule. 791 N.W.2d at 249. "Arrest" under the federal speedy indictment rule means the time when the defendant is first

_____

Wis. Stat. Ann. § 971.01(2) (West, Westlaw current through 2017 Act 6, published April 25, 2017). One jurisdiction measures the time from the defendant's initial appearance before a magistrate. *See* Me. R.U. Crim. P. 48(b)(2) (West, Westlaw current with amendments received through March 1, 2017). A large number focus not on speedy trial, but excessive pretrial incarceration, and require discharge on a failure to bring the indictment. *See* Mich. Comp. Laws Ann. § 767.26 (West, Westlaw current through P.A. 2017, No. 33 of the 2017 Reg. Sess.); Neb. Rev. Stat. Ann. § 29-1201 (West, Westlaw current through legislation effective March 30, 2017); N.C. Gen. Stat. Ann. § 15-10 (West, Westlaw current 2016 Reg. Sess., S.L. 2016-126 from the 2016 4th Extra Sess. and S.L. 2017-5, 2017-8, and 2017-9 of the 2017 Reg. Sess.); Texas Code Crim. Proc. Ann. art. 32.01(a) (West, Westlaw current through 2015 Reg. Sess.); Va. Code Ann. § 19.2-242 (West, Westlaw current through the end of 2016 Reg. Sess. and 2017 Reg. Sess. cc. 1 to 3, 32, 62, 82, 147, 156, 180, 181, 197, 287 & 314); Wash. Super. Ct. Crim. R. 3.2.1(f)(1) (West, Westlaw current with amendments through March 15, 2017); W. Va. Code Ann. § 62-2-12 (West, Westlaw current with legislation through March 14, 2017). There appears to be only three other jurisdictions that measure speedy indictment from arrest. One of these requires the defendant also be "held to answer" before the rule is implicated. *See* Idaho Code Ann. § 19-3501(1) (West, Westlaw current with immediately effective legislation of the 1st Reg. Sess. of the 64th Legis.). Another only applies if the defendant is held in continuous custody. *See* Fla. R. Crim. P. 3.134 (West, Westlaw current with amendments through Feb. 15, 2017). The third requires either charging or holding in continuous custody. *See* La. Code Crim. Proc. Ann. art. 701(B)(1)–(2) (West, Westlaw current through 2017 1st Extraordinary Sess.). This review fails to reveal a single jurisdiction that conducts a fact-specific inquiry on the circumstances of arrest before applying the speedy indictment rule. If there are other jurisdictions that have, they appear to have abandoned the approach. *Compare United States v. Beberfeld*, 408 F. Supp. 1119, 1124 (S.D.N.Y. 1976) (finding the six-month period for speedy trial runs from arrest, regardless of whether a charge is filed), *with United States v. Hillegas*, 578 F.2d 453, 457 (2d Cir. 1978) ("The line is drawn . . . at the point where charges are actually pending against an individual.").

charged and held to answer for a charge. *See United States v. Sayers*, 698 F.2d 1128, 1130–31 (11th Cir. 1983); *see also Speedy Trial*, 45 Geo. L.J. Ann. Rev. Crim. Proc. 449, 458 & n.1284 (2016) (noting the federal time limit "does not begin when a defendant is arrested and released without being charged" and compiling cases). We continued to apply a fact-based analysis to trigger the speedy indictment rule by focusing on the circumstances surrounding custody. We even took a step further away from considering the comprehensive statutory manner of an arrest by defining an arrest for the purposes of the speedy indictment rule as of the time when seized under constitutional law. *Wing*, 791 N.W.2d at 248.

We have never looked back to confront the obvious shortcoming in our analysis used in deciding to take the path followed in *Schmitt*. In interpreting the speedy indictment rule in *Schmitt*, we properly relied on the statutory definition of an "arrest." *See Schmitt*, 290 N.W.2d at 26. We also properly considered the statutory requirements under Iowa Code section 804.14 that normally must occur as a part of an arrest. *See id.* This requirement directs the person making the arrest to inform the person being arrested of the intention to arrest, the reason for the arrest, the identity of the person making the arrest as a peace officer, and the requirement for the person to submit to custody. *See* Iowa Code § 804.14. If the arrest is by warrant, the person making the arrest may also be required to show the person the warrant. *See id.* These procedures describe the "manner authorized by law" in taking a person into custody. *See id.* §§ 804.5, .14.

The shortcoming of the important first step we took in *Schmitt* was the failure to identify and account for the other statutory directives applicable to taking a person into custody "in the manner authorized by

law." *Id.* § 804.5. The critical point is that the manner of making an arrest under Iowa law does not end with the on-the-scene requirements identified in section 804.14. Importantly, the process of arrest requires that the person arrested must also be taken from the scene to the nearest or most accessible magistrate without unnecessary delay. *Id.* §§ 804.21, .22. This procedure is a vital part of the arrest because it gives the arrested person the most protection. *See State v. Lee*, 222 N.W.2d 471, 473–74 (Iowa 1974). Once the arrested person is before the magistrate, the arrest process is complete, the person is no longer under the control of the arresting officer, and all the rights under the law available to defendants become applicable, including the right to a probable-cause preliminary hearing and the right to a speedy indictment. *See* Iowa R. Crim. P. 2.2(1)–(4).

Accordingly, if a person is taken into custody "in the manner authorized by law," the person will be taken before a magistrate, *see id.* r. 2.2(1), entitled to a preliminary hearing within ten days, *see id.* r. 2.2(4)(*a*), and entitled to be discharged if the magistrate finds no probable cause that a crime was committed or that the defendant did not commit the crime, *see id.* r. 2.2(4)(*e*). Thus, while *the time* for bringing the indictment runs from the initial arrest, *the necessity* for a speedy indictment following an arrest is derived only from a finding of probable cause or the defendant's waiver of a probable-cause hearing. A speedy indictment is only needed when a defendant is arrested and subsequently held to answer by the magistrate following the arrest.

It is understandable that we failed in *Schmitt* to consider the complete manner of making an arrest. Unlike an arrest in most situations, the defendant in *Schmitt* had been in custody prior to his arrest, and it was logical for the arresting officers to return him to jail

instead of taking him before a magistrate. *See Schmitt*, 290 N.W.2d at 25–6. Based on that perspective, we concluded "the actions taken" by the arresting officer and the "result[s] achieved fulfill[ed] the statutory criteria of an arrest." *Id.* at 26. Clearly, the statutory objectives of an arrest for a criminal offense were not accomplished because the law also required the arresting officer to bring the person before a magistrate. *See* Iowa Code § 813.2 (1979) (Iowa R. Crim. P. 2(1)).

In the cases leading up to the 1976 revisions, defendants were not only arrested, they were also charged by preliminary information, appeared before a magistrate, held in continuous custody, released on bail, or subjected to some combination of these normal incidents of prosecution. *See State v. Thomas*, 222 N.W.2d 488, 490 (Iowa 1974); *Lee*, 222 N.W.2d at 472; *Morningstar*, 207 N.W.2d at 773; *Mays*, 204 N.W.2d at 865. If the legislature was responding to these holdings in 1976, there is no evidence they intended the rule protect defendants not charged, held in continuous custody, or otherwise prosecuted. "Normally, the date of an arrest and the date of prosecution follow hand in hand," but they can "become detached." *Penn-Kennedy*, 862 N.W.2d at 387, 388. If they become detached, the operation of the rule becomes detached from its purpose and remedy. There is no prosecution to dismiss, no defendant to release, and no bail money to return. *See* Iowa R. Crim. P. 2.33(2)(*d*). Instead, it operates only to accelerate the statute of limitations. *See Penn-Kennedy*, 862 N.W.2d at 389–90. Just like the arresting officers in *Schmitt*, we failed to consider all the required actions of an arrest as a part of "the statutory criteria of an arrest." *Schmitt*, 290 N.W.2d at 26. Had we not confined our analysis to the specific facts of the case, we would have considered the full statutory requirements of an

arrest, and we would have seen that the defendant in *Schmitt* was indeed arrested, but not in the manner authorized by law.

The failure to account for the entire process of an arrest in *Schmitt* significantly undermines our confidence in the interpretation of the speedy indictment rule. This shortcoming alone causes us to acknowledge our mistake and directs us to correct it. The need to correct our mistake is also revealed by the inconsistent outcomes we have reached over the years and the inconsistent application of the speedy indictment rule that fails to give the same relief to juvenile offenders as it does to adult offenders and encourages the use of "placeholder" charges during the pendency of an investigation. For example, the State argues Williams was not entitled to speedy indictment protection because he was a minor. Under the State's interpretation, Washington and Smith, both adults, would go free while Williams would not. *See Harriman*, 513 N.W.2d at 726. Alternatively, Williams was found with a marijuana pipe, a simple misdemeanor. *See* Iowa Code § 124.414(1)(*a*)(2), (2). If the police would have charged Williams with this offense that would mean, under our precedent, that Williams was arrested for that offense only, and charges for sexual assault could come at any time within the statute of limitations. *See Penn-Kennedy*, 862 N.W.2d at 390. Washington and Smith, found with no contraband, would obtain the benefit of the speedy indictment rule while Williams would not. This is all regardless of the presence or absence of probable cause at any point in the investigation.

The speedy indictment rule gives effect to the constitutional guarantee of speedy trial. *See Wing*, 791 N.W.2d at 246; *see also* Iowa Const. art. I, § 10.

The purpose of these protections, both constitutional and statutory, is to relieve one accused of a crime of the hardship of indefinite incarceration awaiting trial or the anxiety of suspended prosecution, if at liberty on bail, and to require courts and peace officers to proceed with the trial of criminal charges with such reasonable promptness as proper administration of justice demands.

*State v. Allnutt*, 261 Iowa 897, 901, 156 N.W.2d 266, 268 (1968), *overruled on other grounds in Gorham*, 206 N.W.2d at 913; *see also Penn-Kennedy*, 862 N.W.2d at 387 ("As with all three segments of the speedy trial rule, the speedy indictment rule serves to 'relieve an accused of the anxiety associated with' the suspension of a prosecution, provide for the 'reasonably prompt administration of justice,' prevent the loss of evidence, and maintain a fair process." (quoting *Wing*, 791 N.W.2d at 246–47)). Here, the defendants did not need relief from "the hardship of indefinite incarceration," or even "the anxiety of suspended prosecution." *Allnutt*, 261 Iowa at 901, 156 N.W.2d at 268. After the arrest, the police did not file a complaint. The defendants did not appear before a magistrate for arraignment or undergo a preliminary hearing. There is no argument of unreasonable delay or loss of evidence. Dismissing the charges against these defendants does not reflect the aim and purpose of the constitutional right to a speedy trial.

In the end, we cannot always rely on our venerable doctrine of stare decisis, or legislative acquiescence, to direct the outcome of cases. *McElroy*, 703 N.W.2d at 395 ("[W]e must remember that legislation sometimes persists on account of 'inattention and default rather than by any conscious and collective decision.'" (quoting Ronald Dworkin, *Law's Empire* 319 (1986))). The course we must follow is not to ignore our mistakes, but to correct them. *See Stuart*, 247 Iowa at 714, 74 N.W.2d at 216 (overruling precedent when "more mischief will be done" by adherence than overruling). Thus, we do not take a different course from

the past out of dislike for the course taken, but to correct an incorrect analysis that sent us down the wrong path. This correction will realign the speedy indictment rule so that it will be applied in all cases as intended by our legislature and serve the purposes of the rule.

**V. Conclusion.**

Arrest for the purposes of the speedy indictment rule requires the person to be taken into custody in the manner authorized by law. The manner of arrest includes taking the arrested person to a magistrate. The rule is triggered from the time a person is taken into custody, but only when the arrest is completed by taking the person before a magistrate for an initial appearance. For these reasons, we vacate the court of appeals decision and affirm the judgment of the district court. Because we decide these cases on these grounds, we need not address the additional arguments raised by the parties and amicus.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**

Waterman, Mansfield, and Zager, JJ., join this opinion. Mansfield, J., files a specially concurring opinion in which Waterman and Zager, JJ., join. Wiggins, J., files a dissenting opinion. Hecht, J., files a separate dissenting opinion in which Appel and Wiggins, JJ., join.

**MANSFIELD, Justice (concurring specially).**

I join the court's opinion. I write separately to emphasize that our caselaw prior to *State v. Wing*, 791 N.W.2d 243 (Iowa 2010), required a *statutory arrest* to trigger the speedy indictment rule. In *Wing*, we jettisoned that approach and decided that a *seizure for Fourth Amendment purposes* was sufficient to start the clock running. *Id.* at 249. We did so while acknowledging that a statutory arrest "is not coterminous with the standard used to determine whether a person has been seized for Fourth Amendment purposes." *Id.* at 248.

In other words, *Wing* brought about a significant change in the law. I think most Iowa prosecutors and defense attorneys would agree.

*Wing* hasn't worked out and this case illustrates why. The Waterloo police were responding to an emergency report at 5:30 a.m. from a fifteen-year-old girl that she had been drugged and gang-raped in a house. The girl further reported that her fifteen-year-old girlfriend might still be in the house and might also have been gang-raped. The officers entered the house, found the other girl crying, and detained the occupants of the house as well as Deantay Williams who was walking away from the house. The officers took statements from all the occupants and collected DNA samples from the five men and boys, including Williams. They were then released. No one was told he was arrested; no one was booked. Many months later, the final DNA test results came back. At this point, four of the five were formally arrested and charged, the DNA results having exonerated one of the five.

Most people would consider the process I have described to be good police work. It was fair to the State, the defendants, the victims, and particularly the individual who was exonerated and never charged.

But *Wing* wouldn't allow it. Instead, *Wing* forces the State into the following quandary: Do not take anyone into temporary custody, regardless of the circumstances or the emergency, or else you will have to bring your trial information against that person within 45 days. Thus, *Wing*, predictably, leads to premature charging decisions.

For decades prior to *Wing*, our court had consistently interpreted Iowa Rule of Criminal Procedure 2.33(2)(*a*) as being triggered by a statutory arrest, not mere Fourth Amendment custody. Thus, in *State v. Schmitt*, we noted that rule 2.33(2)(*a*) (then rule 27(2)(*a*)) had been enacted simultaneously with Iowa Code sections 804.5 and 804.14 (Supp. 1977) regarding arrest and needed to be construed with them. 290 N.W.2d 24, 26 (Iowa 1980). We said, "[W]e define 'arrest' in rule 27(2)(*a*) to be the same as the definition provided in section 804.5, as explained in section 804.14." *Id.* We overruled *Schmitt* in *Wing* when we swapped out statutory arrest for Fourth Amendment custody.

But *Schmitt* was not the only decision overruled by *Wing*. In *State v. Gathercole*, we held that a person who had been taken into custody in Utah by a private transport company and brought under guard to Iowa following extradition had not been arrested for speedy indictment purposes, noting, "We define an 'arrest' in speedy-trial cases by our general law of arrest under Iowa Code chapter 804 because rule of criminal procedure 27(2) and Iowa Code section 804.14, which describes the manner of making arrests, were enacted together." 553 N.W.2d 569, 572 (Iowa 1996).

Then, in *State v. Dennison*, we stated, "This court has also rejected the contention that a de facto arrest triggers the speedy indictment time." 571 N.W.2d 492, 495 (Iowa 1997) (per curiam). In *Dennison*, the defendant was "detained for investigative purposes for a relatively short

period of time" but no citation or complaint was issued.  *Id.* at 497.
Approximately three months later, when the drug test results came back,
the defendant was charged with OWI.  *Id.* at 493–94.  We found no
speedy indictment violation.  *Id.* at 496–97.  We discussed the same
policy consideration I've referred to above:

> If a defendant is arrested and charged with a crime, and that
> charge is later dismissed based upon a test result, it is
> inevitable the defendant will have suffered some adverse
> consequences from the arrest, such as enduring booking
> procedures, possible incarceration awaiting initial
> appearance, bond or release requirements, court
> appearances, expenditures for legal representation, and
> publication of the arrest in the newspaper.

*Id.* at 497; *see also id.* ("[I]t is beneficial for both the State and the
defendant for the officer to refrain from making an arrest and issuing a
citation for a violation for which the most crucial evidence is not
available.  Peace officers should not arrest individuals on insufficient
evidence.").

Both the language and the results in *Gathercole* and *Dennison* are
incompatible with what we said and did in *Wing*.

Similarly, in *State v. Davis*, the officer took the defendant into
custody, handcuffed him, completed a written citation and complaint,
gave those forms to the defendant to sign, turned the defendant over to
the jailer, and booked him.  525 N.W.2d 837, 838 (Iowa 1994).  We said
that this "easily corresponds" to the statutory definition of arrest in Iowa
Code sections 804.5 and 804.14.  *Id.* at 839.  It did not matter that the
defendant had been released before his initial appearance.  *Id.* at 841;
*see also State v. Rains*, 574 N.W.2d 904, 910 (Iowa 1998) ("The definition
of 'arrest' for purposes of [the speedy indictment rule] is governed by the
general law of arrest provided in Iowa Code chapter 804, specifically
sections 804.5 and 804.14.").

While our pre-*Wing* decisions consistently invoked the Iowa statutes on arrest, not the Fourth Amendment, they perhaps lacked some clarity as to when a statutory arrest occurs for speedy indictment purposes. Today's decision in my view helpfully draws a bright line. I join it in full.

Waterman and Zager, JJ., join this special concurrence.

**WIGGINS, Justice (dissenting).**

I join Justice Hecht's dissent and write separately to lament the majority's departure from stare decisis. In December 2010, the court correctly decided *State v. Wing,* 791 N.W.2d 243 (Iowa 2010) for all the reasons set forth in Justice Hecht's dissent. Nothing has changed since December 2010, except the members of the court. Stare decisis should not depend on the members of the court at a given time.

"Adherence to the principle of stare decisis does not permit a court to overrule past decisions simply because a majority of the court as constituted at a given point in time believes that a past decision was wrongly decided." Robert A. Sedler, *The Michigan Supreme Court, Stare Decisis, and Overruling the Overrulings*, 55 Wayne L. Rev. 1911, 1929 (2009) [hereinafter Sedler]. In fact, "when a judge becomes a member of a court, the judge must accept prior decisions as controlling and must operate within the framework of the doctrine and precedent established by the court's prior decisions." *Id.* at 1914.

In the words of the author of the majority's opinion, "We are slow to depart from stare decisis and only do so under the most cogent circumstances." *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013). This case does not present those circumstances.

Previously, we recognized

> [i]t is of the greatest importance that the law should be settled. Fairness to the trial courts, to the legal profession, and above all to citizens generally demands that interpretations once made should be overturned only for the most cogent reasons. . . . [T]his does not mean that [the law's] forward progress should be over the dead bodies of slain and discarded precedents. Legal authority must be respected; not because it is venerable with age, but because it is important that courts, and lawyers and their clients,

> may know what the law is and order their affairs accordingly.

*State v. Liddell*, 672 N.W.2d 805, 813 (Iowa 2003) (alterations in original) (quoting *Stuart v. Pilgrim*, 247 Iowa 709, 714, 74 N.W.2d 212, 215–16 (1956)).

Another member of our court once wrote, "Stare decisis demands greater respect for our precedent." *State v. Ambrose*, 861 N.W.2d 550, 563 (Iowa 2015) (Waterman, J., concurring specially). Those words are just as applicable today. However, what the majority does today is overrule a prior decision with which they disagree in order to advance their own view of the law. *See* Sedler, 55 Wayne L. Rev. at 1912. I write to question the majority's abandonment of stare decisis and call for the restoration of the principle of stare decisis in Iowa jurisprudence. *See id.*

Accordingly, I dissent and join Justice Hecht's dissent.

**HECHT, Justice (dissenting).**

I believe the court of appeals correctly applied settled law requiring a speedy indictment. Finding no persuasive ground for reversing a long line of our cases interpreting Iowa Rule of Criminal Procedure 2.33(2)(*a*), I respectfully dissent.

The majority correctly notes that prior to January 1, 1978, the state's deadline for indicting a person suspected of committing a crime ran from the date the person was "held to answer." *See* Iowa Code § 795.1 (1975). In other words, prior to 1978 the speedy indictment clock began to run upon a finding of probable cause that an offense was committed and the accused committed it. In what the majority describes as "a comprehensive review and major overhaul" of the Iowa Criminal Code that became effective in 1978, the legislature significantly changed the language upon which the speedy indictment rule is based.

The former "held to answer" formulation for the commencement of the indictment timeline was deleted by the legislature in the new rule 27(2)(*a*). Under the new rule, the arrest was chosen as the event from which the indictment deadline is measured. We first had occasion to interpret the new formulation of the speedy indictment rule in *State v. Schmitt*, 290 N.W.2d 24 (Iowa 1980). In that case, Schmitt was in custody awaiting trial on a burglary charge. *Id.* at 25. He escaped from custody on October 18, 1978, but was found by a law enforcement officer later the same day, detained at gunpoint, handcuffed, and returned to jail. *Id.* at 26. More than ninety days passed before the state filed a new information charging Schmitt with the crime of escape from custody. Schmitt filed a motion to dismiss, contending the charge was untimely

because it was not filed within forty-five days after he was arrested. *Id.* at 25.

On appeal from the district court's ruling denying the motion to dismiss, we focused on the textual difference between the former "held to answer" language in section 795.1 and the new speedy indictment timeline commencing under rule 27(2)(*a*) with an "arrest." We concluded the textual difference was significant and consequential.

> The terms are not synonymous. As previously stated, "arrested" means being physically taken into custody in the manner authorized by law. Formerly, physical restraint was, irrelevant to a determination of whether the defendant had been "held to answer." Rather, the term was narrowly defined to mean being held to answer by a preliminary examination or waiver of same.

*Id.* at 27 (citation omitted). Noting the obvious textual difference between the language in the former section 795.1 and the language in the new rule 27(2)(*a*), we concluded the information charging Schmitt with escape from custody was untimely because it was filed more than forty-five days after Schmitt's arrest on October 18, 1978. Our decision in *Schmitt* was based on the unambiguous text of the rule; it was faithful to the general principle that a modification of the language of a statute gives rise to a presumption that a change in the law was intended. *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 425 (Iowa 2002); *State v. Ahitow*, 544 N.W.2d 270, 273 (Iowa 1996); *see also* 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 22.1, at 245–47 (7th ed. 2009).[4]

---

[4]The majority cites a cryptic passage from an article written by Professor Yeager and Professor Carlson suggesting they intended no significant changes of the speedy indictment provisions in the Criminal Code overhaul enacted during the 1976 legislative session. In assessing the meaning of rule 27(2)(*a*), now rule 2.33(2)(*a*), and the legislative intent behind it, I give great weight to the words actually appearing in the

In a series of cases decided after *Schmitt*, this court performed its proper appellate role—interpreting and applying the statutory definitions of arrest found in Iowa Code sections 804.5 and 804.14 to various and sundry fact patterns presenting speedy indictment claims. *See State v. Wing*, 791 N.W.2d 243, 247–52 (surveying and synthesizing this court's opinions interpreting "arrest" in the speedy indictment context). In each of those cases, we applied rule 27(2)(*a*) or its successor, rule 2.33(2)(*a*), as they were written by the legislature. In each instance, we focused faithfully on the text of the rule and decided whether an information was filed within the timeline provided by law under the circumstances.

The majority abruptly changes course in this case, turning the clock back to the pre-1978 formulation of the rule. Concluding this court got it wrong in *Schmitt*, the majority decides today that an arrest for purposes of the speedy indictment rule does not occur until one is held to answer. I disagree for several reasons.

The first reason is based on the text of the rule. The plain language of rule 2.33(2)(*a*) does not include the "held to answer" doctrine that was put to rest by the legislature in 1978. Well-established rules counsel against resuscitation. Our role is "to interpret our rule according to the legislative intent as revealed by the language of the rule." *State v. Dullard*, 668 N.W.2d 585, 595 (Iowa 2003). In performing our interpretive role, "[w]e determine legislative intent from the words chosen by the legislature, not from what it should or might have said. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). It is not our role to extend, enlarge, or otherwise change the meaning of a

_____

rule, and substantially less weight to the post-hoc characterizations of intent offered up by the professors.

statute under the guise of construction. *Id.* We do not divine innovations or make improvements when interpreting the legislature's work; rather, we interpret it as we find it. *State v. Spencer*, 737 N.W.2d 124, 129–30 (Iowa 2007). In my view, my colleagues in the majority give too little attention to these rules limiting our interpretive license in restoring the "held to answer" framework abandoned nearly forty years ago by the legislature.

Second, we have decided numerous speedy indictment cases in the thirty-seven years since *Schmitt* was decided. *See Wing*, 791 N.W.2d at 247–52 (surveying cases interpreting "arrest" in the speedy indictment context). Notably, the legislature took no corrective action in the intervening decades suggesting we misunderstood its intention as we repeatedly measured the indictment deadline from the time of the arrest. This scenario is a textbook scenario for application of the doctrine of legislative acquiescence. *See Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 682, 688 (Iowa 2013) (considering legislature's inactivity over twenty-seven-year period in response to our decisions holding the Iowa Civil Rights Act did not implicitly permit recovery of punitive damages); *State v. Abrahamson*, 746 N.W.2d 270, 277 (Iowa 2008) ("The legislature's failure to amend the statute to enumerate multiple offenses suggests our understanding of the statute comports with the intent of the drafters."); *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 574 (Iowa 2002) (legislative inaction in response to this court's interpretation of a statute given considerable weight). If we misunderstood its intent in *Schmitt* or in our many other subsequent decisions measuring the indictment deadline from the point of arrest during the past three-and-one-half decades, surely the legislature would have taken corrective

action.  Because the legislature did not take such action, my confidence that we got it right in *Schmitt* is all the stronger.[5]

Third, this case starkly illustrates that if being "held to answer" is the trigger for the speedy indictment clock, a perverse incentive arises for law enforcement officers to delay prosecutions—conduct that is antithetical to the important goals of speedy trials.  *See State v. Delockroy*, 559 N.W.2d 43, 46 (Iowa Ct. App. 1996) (noting the purpose of procedural rules and constitutional provisions implementing speedy trial rules is to "relieve an accused of the anxiety associated with suspended prosecution and provide reasonably prompt administration of justice").  The acts that led to the sexual assault charges against Deantay Williams and two other men occurred in the early morning hours of June 10, 2012.  Williams and the others were taken into custody, handcuffed, and taken to the police station for interrogation that same morning.  Williams and one of the others admitted during the interrogations that they had engaged in sexual intercourse with two fifteen-year-old girls who reported they had been raped.  Yet, the informations charging the three defendants were filed 510 days later.  Although the State claims the delay in filing the charges was attributable to the slow pace of DNA testing, the identity of Williams and one of the other defendants as participants in the alleged sexual abuse of both girls was not in dispute from day one.  During the long delay of 510 days, evidence likely grew stale and memories faded while Williams and the others waited, uncertain whether the prosecutions would go forward.  *See State v.*

---

[5]The legislature's acquiescence in our interpretation of the rule adds force to my view expressed above in note 1 that the actual words enacted by the legislature in rule 2.33(2)(*a*) should be our polestar—not the summary characterization of the professors who assisted in the drafting.

*Olson,* 528 N.W.2d 651, 654 (Iowa Ct. App. 1995) (acknowledging that impairment of an accused's defense due to diminished memories and loss of exculpatory evidence is considered the most serious form of prejudice arising from delayed prosecutions).

The plain language interpretation of rule 2.33(2)(*a*) applied by this court for more than three decades and relied upon by the court of appeals in this case encouraged prompt prosecutions and promoted the goals of speedy trials guaranteed by the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. I would not abandon it. Accordingly, I would affirm the decision of the court of appeals and remand to the district court for entry of a ruling dismissing the charges.

Wiggins and Appel, JJ., join this dissent.